The STATE of Ohio, Appellee,

v.

RICHCREEK, Appellant.

[Cite as *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–09–072.

Decided Sept. 16, 2011.

508

Paul A. Dobson, Wood County Prosecuting Attorney, and Heather M. Baker and Jacqueline M. Kirian, Assistant Prosecuting Attorneys, for appellee.

James F. Schaller II, for appellant.

YARBROUGH, Judge.

{¶ 1} Defendant-appellant, Joseph Richcreek, appeals his conviction and sentence on five counts of rape. The victims are Richcreek's twin half-sisters (identified herein as "A.M." and "A.L."). The alleged rapes occurred at a home that the sisters share with their stepfather, mother, and Richcreek in Perrysburg Township.

{¶ 2} In March 2009, the Wood County Grand Jury first indicted Richcreek on two single counts of rape against A.M. and A.L., denominated as case Nos. 2009CR0124 and 2009CR0125, respectively. Then, in August 2009, a second indictment was returned against him containing three additional counts as to A.L., denominated as case No. 2009CR0375. All counts of rape are first-degree felonies in violation of R.C. 2907.02(A)(2). The jury found Richcreek guilty on all five counts following a two-day trial. Sentencing and sex-offender-classification hearings were held. The trial court determined Richcreek to be a Tier III offender and ordered him to register as such. The court then sentenced him to five consecutive eight-year terms of imprisonment. This appeal ensued.

{¶ 3} For the reasons that follow, we reverse. Because this appeal involves different witnesses and different dates for the alleged rapes, we will discuss the facts separately with respect to each sister.[1]

{¶ 4} The record, witness testimony, and documents admitted at trial reflect the following facts relevant to the sole count of rape involving A.M. This incident allegedly occurred in February 2007, when she was 17 years old. At trial the state first called Nicholas Bissett, a friend of A.M., who testified that they had attended school together at Penta Career Center. According to Bissett, one night while on his computer, he received an instant message from A.M. that said,

---

1. Because the parties' briefs contradict each other in their use of initials to refer to a particular sister, the initials used herein correspond to the name of the sister as identified in the trial court's jury instructions.

"My older brother raped me."  Defense counsel objected to this testimony on hearsay grounds.  After the prosecutor responded that "it's not being offered for the truth of the matter asserted necessarily but to show what [A.M.] did," the court overruled the objection.  Bissett then testified that A.M.'s message said that she had been in the basement where Richcreek's bedroom was and that he "cornered me, pushed me on his bed, and * * * had his way with me."  He urged her to report the incident, but A.M. replied, "Don't tell anyone," and "I'll handle it in my own way."  Sometime later, Bissett received a second computer message from A.M. that said, "Joe did it to me again."  Further objections were overruled.

{¶ 5} The next day at school Bissett took her to a Penta County school official to report the incident.  This led to a February 26, 2007 interview with Matthew Weaver, a Perrysburg Township police officer, during which Weaver obtained written statements from both Bissett and A.M.  At trial, Weaver testified about A.M.'s handwritten 2007 report.  Over a hearsay objection, he was allowed to summarize the contents of this report, telling the jury that "for the past five years she had been molested by her half brother Joseph [and she] stated it had taken place numerous times since she had been twelve years old."  The report described these encounters in which A.M. wrote that Richcreek would "molest me by grabbing my chest or touching my vigina [sic].  He would then have sex with me."  Weaver indicated that A.M. denied that Richcreek forced or threatened her, but that "she did indicate each time that she told him no."  Further hearsay objections were overruled on the same nonhearsay basis, and A.M.'s report was admitted at trial.

{¶ 6} After meeting with Weaver, A.M. was taken to St. Luke's Hospital, where she met with sexual-assault nurse Sharon Wilson and Wood County Children Services investigator Jennifer Bender.  Despite defense counsel's "ongoing hearsay objection," Bender summarized the substance of her report at trial, stating that A.M. said that "she had been raped by Joseph Richcreek."  According to Bender, A.M. and her mother, Barb English, who was also present, were uncooperative.  A.M. refused a sexual-assault examination because "she did not want her brother to go to jail [but] just wanted him to move out of the house."  Bender testified that her agency declined to pursue criminal prosecution of the rape allegation in 2007 "due to [the] family's non-cooperation."  Nurse Wilson testified that A.M. refused a rape-kit exam, although a pelvic exam and a pregnancy test were conducted.  The hospital's emergency-department physician's report lists "possible sexual assault" and "questionable sexual assault" as the reasons for the examination.  The emergency-department report was admitted at trial.

{¶ 7} The next day at school, A.M. met with Perrysburg Township Officer Rachel Bernhard, who was also the Penta County school-resource officer.  Bern-

hard testified that A.M. said Richcreek approached her while she was at her computer "and told her to meet him in the basement [where] his bedroom was." Though counsel asserted a second "ongoing" hearsay objection to Bernhard's testimony, the court overruled it, telling the jury: "Again, it's not being offered for the truth of the matter asserted and the witness is under subpoena and subject to cross-examination." Bernhard then testified that A.M. said that Richcreek "made her grab his penis [and then] made her take her pants off and he threw her on the bed and had sexual intercourse with her." Bernhard stated that A.M. denied that Richcreek had made threats or held her down, "but she told him no, but he did it anyway." A.M. said that she did not tell anyone about the incident, Bernhard testified, because "she didn't want her brother to be in trouble or go to jail."

{¶ 8} Two years later, in February 2009, Perrysburg Township Detective James Gross met with A.M. to discuss her 2007 report. Gross did so because he was then investigating similar claims made more recently by her sister, A.L., that Richcreek had sexually assaulted her several times. At trial Gross testified that A.M. told him that the earlier 2007 allegations were true, but that she had not cooperated then because "she did not want to get her brother in trouble." After this meeting, A.M. wrote three emotionally ambivalent letters to Gross. Much of the subject matter was vague, but none of the letters made specific claims of forcible sexual assault by Richcreek. The letters were admitted at trial.

{¶ 9} From both Detective Gross's investigation and a voice-mail message that the prosecutor received from A.M. several weeks before trial, the state was already aware that she would be recalcitrant. She was subpoenaed to testify for the prosecution on August 17, 2009, but failed to appear at trial. The prosecutor then moved for and was granted a material-witness arrest warrant, and A.M. was arrested the same day. Prosecution witnesses Bissett, Weaver, Bernhard, Bender, and Wilson all testified prior to A.M.

{¶ 10} When A.M. testified on August 18, she recanted the substance of her earlier statements to these witnesses, specifically denying that Richcreek raped her. A.M. conceded making the 2007 rape claim, but stated that she did so only because she was jealous of the way her parents favored Richcreek "with more attention," while being strict with her, and because she "wanted him kicked out of the house." She persisted with the rape claim during Gross's 2009 investigation only because she feared "[getting] in trouble for writing a false [police] report." Through extensive questioning about her previous statements to the various witnesses and those in her police report and letters to Gross, the prosecutor attempted to impeach A.M.'s recantation. However, she continued to deny having been raped by Richcreek. Defense counsel then cross-examined her about her prior statements. She again denied that Richcreek ever threatened

her or forced her to have intercourse, explaining that she fabricated the claim out of jealousy because he received more favorable parental attention and gifts, such as a car.

{¶ 11} Unlike A.M., A.L. did not recant her claims of rape. The four incidents on which these counts are based are as follows. A.L. testified that on January 30, 2009, while at home, she and Richcreek were "wrestling around" in the living room. He then "took [her] downstairs and had sex with [her]" in his basement bedroom. A.L. explained that after telling him to stop, he continued removing her clothes. When she tried to fight him, "he hit and punched [her]." A.L. testified that on February 2, 2009, after again wrestling with Richcreek, "he drug [her] downstairs to his room, and he had sex with [her] again." She was 19 at the time of the 2009 incidents.

{¶ 12} A.L. also testified that Richcreek raped her twice in December 2008. The first incident occurred on December 19 after Richcreek and A.L. had been wrestling in the living room. Later, after taking a shower, she found a note Richcreek left in her bedroom asking her to come to the basement. She complied and, once there, he asked to borrow some money. A.L. stated that Richcreek then "grabbed ahold of me and threw me on his bed and had sex with me." She attempted to push him away, but testified that "he's stronger than me and overpowered me." She did not tell her mother because she feared she would not believe her.

{¶ 13} A.L. testified that the next morning, Richcreek apologized "for what he did the day before." Later, however, while she was doing laundry in the basement, he assaulted her again. A.L. testified that during this incident Richcreek "grabbed me by the back of my pants and drug me to his room and had sex with me." Seven days later, she told her father that Richcreek "kept having sex" with her. He asked A.L. if she wanted him to tell her mother. She replied that he should because her mother would not believe her. During her direct testimony, A.L. identified a stun gun that Detective Gross seized during his execution of a search warrant at the residence. A.L. testified that Richcreek kept the stun gun next to his bed and "threatened that he'd use it on me if I told anybody."

{¶ 14} The rapes involving A.L. came to Detective Gross's attention in 2009 while she was serving as a private in the Ohio National Guard. A.L.'s lieutenant, Megan Butler, received a report on February 6 or 7, 2009, from her sergeant, Dwayne King, stating that A.L. had been sexually assaulted. Butler then met with her about the report. At trial, Butler testified that A.L. said her "stepbrother" had "forced [her] to have sex against her will." King testified that she said "her brother had been raping her for a long time." Defense counsel objected to their testimony, but the court permitted it, ruling: "It would not be

hearsay *if it's not being offered for the truth of what this witness is saying, but what they did in response to what they heard* and that witness that made the statement to this witness was also present and subject to cross[-examination]." (Emphasis added.)

{¶ 15} After speaking to A.L., Butler contacted Gross, who interviewed A.L. and made a report. Butler then took A.L. to St. Luke's Hospital, where she was examined on February 7 and again on February 15. The composite report of both exams was admitted at trial. No rape-kit exam was performed because the lapse in time had compromised the collection of forensic evidence. The report noted visible bruises on her arms and thighs and recorded her complaints of "suprapubic pain." It further indicated that A.L. sought testing to determine whether she was pregnant. The hospital report was admitted in evidence at trial.

{¶ 16} Following his interview with A.L., Gross applied for a search warrant for Richcreek's residence and executed it the same day. During the search, Gross encountered Richcreek in the basement. The warrant sought various items of evidence in connection with the sexual assaults on A.L. on January 30 and February 2. The search warrant, including the affidavit, the return, and the inventory pages, were admitted in their entirety at trial.

{¶ 17} Also admitted was a laboratory report from the Bureau of Criminal Identification and Investigation, which indicated that forensic testing on clothing seized in the search was unsuccessful.

{¶ 18} In this appeal, Richcreek has assigned eight errors for review, the third of which states:

{¶ 19} "III. The trial court erred in admitting multiple instances of hearsay."

{¶ 20} In this assignment, Richcreek argues for reversal of his convictions based on the court's repeated allowance of inadmissible hearsay and on the prosecutor's improper use of it during closing argument. Because the challenged testimony raises a number of discrete hearsay issues with respect to each victim, we will address these issues separately.

{¶ 21} Before doing so, however, the apparent antinomy between the parties in applying the hearsay rule to the testimony in this case warrants a brief review of the rule's operative components.

{¶ 22} The prefatory rule for determining whether an extrajudicial statement is hearsay is definitional. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible under Evid.R. 802, unless a particular statement fails to meet the two-part definition in Evid.R. 801(C), or fully satisfies the conditions for nonhearsay prior

statements under Evid.R. 801(D)(1) or (2), or falls within one of recognized exceptions under Evid.R. 803 or 804.

{¶ 23} Where the facts to be proven at trial and the substantive content of an out-of-court statement coincide, it can be presumed that the proponent is offering the statement for its truth. Facially, therefore, the statement meets the two-part hearsay definition. If, however, the statement is explicitly offered without reference to its truth, then under Evid.R. 801(C) it is not hearsay. *State v. Clay,* 187 Ohio App.3d 633, 2010-Ohio-2720, 933 N.E.2d 296, ¶ 27; *State v. Price* (1992), 80 Ohio App.3d 108, 110, 608 N.E.2d 1088. The statement's admissibility is then evaluated by the standard of relevancy balanced against unfair prejudice, which is the province of Evid.R. 403(A). See *State v. Maurer* (1984), 15 Ohio St.3d 239, 263, 473 N.E.2d 768. If germane for some valid purpose (e.g., to show notice), the statement typically would be admissible for that purpose. See, e.g., *State v. Rice,* 11th Dist. No. 09–A–0034, 2010-Ohio-1638, 2010 WL 1444519, ¶ 22; *State v. Hawthorne,* 6th Dist. No. L–03–1120, 2005-Ohio-1553, 2005 WL 736994, ¶ 35–37.

{¶ 24} However, admissibility is not automatic in the case of a "dual use" statement. This is an out-of-court statement having an ostensibly nonsubstantive use, but whose content carries substantive import because it relates to an element of the crime or implicates the defendant directly. Despite a professed nonhearsay use, if the statement's content could also cut toward proof of guilt, the potential for abuse is great. See *State v. Blanton,* 184 Ohio App.3d 611, 2009-Ohio-5334, 921 N.E.2d 1103, ¶ 38–39, and *State v. Blevins* (1987), 36 Ohio App.3d 147, 149–150, 521 N.E.2d 1105. When dual-use statements are offered "to explain conduct," for example, we note that the Tenth Appellate District has imposed special requirements. In *Blanton,* the court held:

{¶ 25} "[T]he conduct to be explained must be relevant, equivocal, and contemporaneous with the statements. * * * Further, the statements must meet the standard of Evid.R. 403(A). * * * Finally, *when the [out-of-court] statements connect the accused with the crime charged, they should generally be excluded.*'" (Emphasis added.) Id. at ¶ 39, quoting *State v. Humphrey,* 10th Dist. No. 07AP–837, 2008-Ohio-6302, 2008 WL 5104775, ¶ 11.

{¶ 26} In short, the well-worn phrase "not offered for the truth of the matter asserted" is not a talismanic incantation that opens the door to everything said outside the courtroom. For an extrajudicial statement of this type, a secondary assessment under Evid.R. 403(A) is required. The trial court must consider whether the risk that the jury will prejudicially misuse the content for its truth exceeds the probative value of the statement for the nonhearsay purpose. *Blanton* at ¶ 39; *Humphrey* at ¶ 11; Evid.R. 403(A). If the court

admits the statement after this weighing, an appropriate limiting instruction must be given to the jury. *Blevins*, 36 Ohio App.3d at 150, 521 N.E.2d 1105; Evid.R 105.[2]

{¶ 27} Of more importance to the testimony challenged here is the derivative principle that when an out-of-court statement is received for a purpose other than the truth of its content, *then the content is not substantive evidence.* See *State v. Kirk*, 6th Dist. No. H–09–006, 2010-Ohio-2006, 2010 WL 1818894, ¶ 28; *State v. Kline* (1983), 11 Ohio App.3d 208, 211, 464 N.E.2d 159; *Dayton v. Combs* (1993), 94 Ohio App.3d 291, 296, 640 N.E.2d 863. Once a statement is so received, its content may not be used or relied upon later as substantive proof (i.e., the truth of what it asserts). *Kirk* at ¶ 28; *State v. Sinkfield* (Oct. 2, 1998), 2d Dist. No. 16277, 1998 WL 677413.

### (1) A.M.'s extrajudicial statements

{¶ 28} Richcreek argues that he was prejudiced by the trial court's admission of A.M.'s out-of-court statements for a purpose which in theory rendered them nonhearsay, but which the prosecution in fact used as substantive evidence to establish the elements of rape under R.C. 2907.02(A)(2), and specifically the essential element of force. In response, the state appears to recognize that admitting A.M.'s statements for a nonhearsay purpose would defeat their use as substantive evidence to prove the rape charge. Indeed, the state now admits that her out-of-court statements were hearsay. Counsel for the state also concedes that the prosecutor, in the state's case-in-chief and in closing argument, did rely on these statements for their substantive truth. The state maintains, however, that regardless of the nonhearsay theory under which they were allowed at trial, most of her statements were admissible as excited utterances under Evid.R. 803(3). The state also suggests that other statements may comport with the exception for "then existing state of mind, emotion [or] physical condition" under Evid.R. 803(2).

{¶ 29} We find the state's new arguments unacceptable for several reasons. Counsel for the state initially asserts that whether to admit or exclude hearsay is within the trial court's discretion. That assertion is incorrect. While there is discretion to admit or exclude relevant evidence, there is no "discretion" to admit hearsay. *State v. Sutorius* (1997), 122 Ohio App.3d 1, 7, 701 N.E.2d 1; *State v. Sorrels* (1991), 71 Ohio App.3d 162, 593 N.E.2d 313.

---

2. A limiting instruction is particularly critical when the statement's content might overtly militate toward inferences of guilt. It is the court's instruction that operates to contain the statement to its nonhearsay character and function. Weissenberger, Ohio Evidence (2010 Ed.), Section 801.10. See *State v. Kelly*, 8th Dist. No. 85662, 2006-Ohio-5902, 2006 WL 3233895, ¶ 28–29 (limiting instruction to jury creates presumption that it was followed).

{¶ 30} In *Sorrels,* the First Appellate District delineated the applicable standard of review for challenged hearsay testimony:

{¶ 31} "[T]he trial court's decision to admit hearsay is not governed by the test of abuse of discretion, which the Supreme Court applies to instances where the trial court's evidentiary rulings relate to matters expressly or implicitly within its discretion, as in rulings on relevancy (Evid.R. 402 and 403) or expert testimony (Evid.R.702). * * * Instead, errors relating to the trial court's admission of hearsay must be reviewed in light of Evid.R. 103(A) and the standard established in Crim.R. 52(A), providing that such errors are harmless unless the record demonstrates that the errors affected a party's substantial right." Id. at 165, 593 N.E.2d 313.

{¶ 32} On appeal, challenged hearsay is subject to de novo review under the applicable hearsay rule, rather than the more deferential review employed for discretionary rulings. Id. The *Sorrels* court also noted that "[i]f the trier of fact, whether it be a jury or a trial judge, expressly relies upon hearsay statements in determining guilt, the admission of the hearsay is prejudicial." Id.

{¶ 33} Second, it is a cardinal rule of appellate procedure that a party cannot assert new legal theories for the first time on appeal. *In re Banks,* 4th Dist. No. 07CA3192, 2008-Ohio-2339, 2008 WL 2043231, ¶ 7–10. This rule applies to new arguments for the admission of evidence not made during trial. See *State v. York* (1996), 115 Ohio App.3d 245, 249, 685 N.E.2d 261 (failure to raise and argue the excited-utterance exception at trial waives the issue on appeal). "Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process." *Mark v. Mellott Mfg. Co., Inc.* (1995), 106 Ohio App.3d 571, 589, 666 N.E.2d 631.

{¶ 34} Third, even assuming that the state's belated argument in defense of the hearsay testimony was properly before us, the exceptions under Evid.R. 803(2) and (3) require the proponent to demonstrate that specific conditions existed before an out-of-court statement qualifies as either an excited-utterance or a declaration of a then-existing mental or emotional state. Here, the trial court never considered whether any of A.M.'s extrajudicial statements met the admissibility criteria for either exception. The prosecutor never argued that they did, nor did she attempt to lay the relevant foundation for either exception. Indeed, it was not her intent to do so. To each objection, the prosecutor merely asserted that repeating A.M.'s statements was necessary for some *nonsubstantive* purpose that rendered them nonhearsay under Evid.R. 801(C); however, if now allowed under any of the Evid.R. 803 exceptions, those same statements would constitute exactly the opposite—i.e., substantive proof of the elements of the crime.

{¶ 35} Evid.R. 803(2) provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is an exception to the hearsay rule. The four-part foundation for qualifying a particular out-of-court statement as an excited utterance has long been an established evidentiary doctrine in Ohio. See *State v. Taylor* (1993), 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316; *State v. Humphries* (1992), 79 Ohio App.3d 589, 598, 607 N.E.2d 921. However, because the state did not attempt to show that any of A.M.'s out-of-court statements met the criteria of this exception, and because the trial court made no such determination, we are unable to conclude on this record that they did. The same is true of certain statements that the state now suggests might be construed as declarations of then existing mental or emotional conditions under Evid.R. 803(3). The various hearsay exceptions require particularized foundational questioning in order to establish the conditions unique to each and from which the trial court can assess whether a statement is admissible under the claimed exception. If challenged as error on appeal, this court can then review whether its admission under that exception was proper in light of the record. That was not done here. See, e.g., *State v. Baker*, 9th Dist. No. 21414, 2003-Ohio-4637, 2003 WL 22047697, ¶ 7–10 (Evid.R. 803(6)); *State v. Shelton*, 11th Dist. No. 2001–P–0050, 2002-Ohio-5157, 2002 WL 31160564, ¶ 6–8 (Evid.R. 803(2)).

{¶ 36} The fourth problem with the state's position is the most serious. The hearsay objections during trial were met with the response that A.M.'s statements were *not* being repeated for their substantive truth-value (i.e., that Richcreek forced her to have intercourse). That representation could only mean that the prosecutor did not intend for these out-of-court statements to prove any element of the crime; rather, they were needed for some limited *nonsubstantive* purpose, such as to establish identity, to show state of mind, to clarify ambiguous conduct, or, as was consistently asserted here, to explain why the witness took certain actions in response to her statement. See, e.g., *State v. Williams* (1988), 38 Ohio St.3d 346, 348, 528 N.E.2d 910, fn. 4.

{¶ 37} However, during closing argument, the prosecutor took a different approach with this same testimony. A review of the trial transcript reveals several instances in which the prosecutor asserted that A.M.'s statements to the witnesses, in effect, proved that forcible sexual conduct occurred. In her rebuttal, for example, the prosecutor stated:

{¶ 38} "[A.M.] *told everybody back in 2007* [that she was] forced and pushed. There was never any indication that he scratched them or used any type of weapon on them or anything like that. *You don't need that for force.*" (Emphasis added.)

{¶ 39} Plainly, on the essential element of force, the prosecutor was asking the jury to accept the truth of what six witnesses told them A.M. said, and then to conclude that her hearsay statements sufficed to prove that element. This constituted an improper use of those statements for their substantive truth-value. We have previously warned against this same switch-of-purpose tactic for otherwise inadmissible hearsay and held it to be prosecutorial misconduct. See *State v. Kirk*, 2010-Ohio-2006, 2010 WL 1818894, at ¶ 33 ("The prosecutor essentially gave the jurors permission to use the hearsay statements as substantive evidence").

{¶ 40} In *Kirk*, this court found reversible error when the prosecutor, in closing argument, "referred to testimony which she [had] expressly claim[ed] to have offered not for its truth, but to explain subsequent actions taken by the detectives." Id. at ¶ 29. There, an investigating detective was permitted to testify to several out-of-court statements from a confidential informant. The prosecutor had elicited these statements purportedly to explain how the detective's investigation developed. Yet, when their actual use was viewed collectively, the statements "were offered to prove the truth of the matter asserted in them [and demonstrate] appellant's guilt by connecting him to a known drug dealer." Id. at ¶ 19–22. Their substantive use during the prosecutor's closing argument went "far beyond" the limited explanatory purpose for which the statements were initially allowed. Id. This court held:

{¶ 41} "The prosecutor has now relied on extrajudicial statements for their truth—statements which she maintained during trial were not offered for their truth—as evidence that appellant brought the crack cocaine from Akron into Willard. The prosecutor's remarks were improper and argued beyond the record." Id. at ¶ 29.[3]

■ {¶ 42} The same conduct—and the same error—occurred here in the use of A.M.'s statements during the state's case-in-chief and in closing argument. See also *State v. Wilson* (Apr. 19, 2002), 1st Dist. No. C–000670, 2002 WL 598226 (prosecutor's reference to inadmissible hearsay in closing argument was misconduct). Also, as in *Kirk*, the trial court failed to give any limiting instruction restricting the jury's use of her statements to the stated purpose. Id. at ¶ 33. See Evid.R. 105. This failure was only exacerbated when the court later instructed the jury, without qualification, that "[e]vidence is *all the testimony* received from the witness stand * * *." (Emphasis added.)

---

3. We also stated in *Kirk* that "[i]f a statement made by an out-of-court declarant is offered into evidence for a purpose other than asserting the truth of its content, then *the content is not substantive evidence. * * * A prosecutor must not later assert those statements for their truth during closing argument.*" (Emphasis added.) Id. at ¶ 28.

{¶ 43} Citing our decision in *State v. Duszynski,* 6th Dist. No. L–10–1063, 2010-Ohio-6511, 2010 WL 5550686, the state argues that the extrajudicial statements elicited from Weaver, Bender, Bernhard, and Gross and the reports in which Weaver and Bender recorded those statements were merely "cumulative," and thus any error in allowing their testimony and the reports was harmless. Generally, where other admissible substantive evidence tending to prove the offense mirrors the improper hearsay, the error in allowing the hearsay is deemed harmless, since it would not have changed the outcome of the trial. See *State v. Byrd,* 8th Dist. No. 82145, 2003-Ohio-3958, 2003 WL 21710795, ¶ 39.

{¶ 44} *Duszynski,* however, is distinguishable because there the victim did not recant at trial. He "testified extensively" about the defendant's acts of sexual imposition. Id. at ¶ 52. His account supplied sufficient proof from which the jury could infer each element of the crime. Although in *Duszynski* we found error in allowing a police detective to recount the victim's statements during an interview about the sexual abuse, the error was harmless in light of the remaining, properly admitted testimony. Id. at ¶ 48–53. Here, in contrast, A.M. recanted her previous statements and denied being raped. There were no eyewitnesses and no conclusive physical or forensic evidence. The notation of a "questionable sexual assault" in the St. Luke's emergency report was ambiguous at best, and when A.M. recanted, the prosecutor used that report solely for impeachment.

{¶ 45} Improper hearsay affects a substantial right only where it appears the trier of fact relied on it for conviction. *State v. Sorrels,* 71 Ohio App.3d at 165, 593 N.E.2d 313. The hearsay that was improperly used here to prove the "force or threat of force" element of R.C. 2907.02(A) was not cumulative, because, absent the hearsay, there was no other admissible substantive evidence to establish that element. Thus, the jury would have had to rely on the hearsay testimony in order to reach a conviction on the rape count involving A.M.

### (2) Improper impeachment under Evid.R. 607(A)

{¶ 46} Richcreek further complains that the trial court erred in allowing the prosecutor to impeach A.M.'s recantation without complying with Evid.R. 607(A). While only indirectly a hearsay issue, the prosecutor's use of A.M.'s contradictory statements in closing argument makes this impeachment issue pertinent to the third assignment of error.[4]

---

4. As we have previously held, "Extrajudicial statements offered for impeachment purposes are not hearsay since they are not offered for the truth of what they state." *State v. Kline* (1983), 11 Ohio App.3d 208, 211, 464 N.E.2d 159. Impeaching statements call into question the witness's credibility or veracity. Except for prior inconsistent statements that meet the special criteria of Evid.R. 801(D)(1)(a) or satisfy the conditions of a hearsay exception, impeaching

{¶ 47} Evid.R. 607(A) states:

{¶ 48} "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."

{¶ 49} A party must demonstrate the predicate conditions of surprise and affirmative damage before undertaking to impeach its own witness. *State v. Keenan* (1993), 66 Ohio St.3d 402, 412, 613 N.E.2d 203. "Surprise" is adequately shown "if the testimony is materially inconsistent with the prior written or oral statements *and counsel did not have reason to believe that the witness would recant when called to testify.*" (Emphasis added.) *State v. Holmes* (1987), 30 Ohio St.3d 20, 23–24, 506 N.E.2d 204. See also *State v. Blair* (1986), 34 Ohio App.3d 6, 9, 516 N.E.2d 240.

{¶ 50} The state responds that because "it appears that the [prosecutor] did not know what [A.M.] would say on the witness stand," her impeachment questioning was proper. This response is plainly disingenuous, given what the transcript reveals. A.M. was not only a witness the state intended to call, but she also had to be put on the stand forcibly by means of a material-witness arrest warrant. In requesting the warrant, the prosecutor told the court: "She did leave me a voice mail message several weeks ago after receiving that subpoena indicating that she was not going to be cooperative in testifying."

{¶ 51} Indeed, during A.M.'s direct examination, the prosecutor did not even claim surprise or damage before confronting her with her previous oral and written statements. Yet the intent was obviously to impeach her in-court recantation. Even if damage is assumed, without also showing surprise, the use of these statements violated Evid.R. 607(A), and the court erred in permitting it. *State v. Liberatore* (1982), 69 Ohio St.2d 583, 588, 433 N.E.2d 561 (finding impeachment improper "when there is good reason to believe the witness will decline to testify as desired"). Given the hearsay errors previously identified, we cannot say that this error was harmless. *Keenan*, 66 Ohio St.3d 402, 613 N.E.2d 203; *Holmes*, 30 Ohio St.3d 20, 506 N.E.2d 204. Further, even had the impeachment comported with Evid.R. 607, the court erred in not giving a limiting instruction to circumscribe the jury's use of the statements to that purpose. See *State v. Lewis* (1991), 75 Ohio App.3d 689, 697–698, 600 N.E.2d 764.

---

statements are not, and may not be relied upon as, substantive proof. See, e.g., *State v. Dick* (1971), 27 Ohio St.2d 162, 164–165, 271 N.E.2d 797; *State v. Parsons*, 6th Dist. No. WD–03–051, 2004-Ohio-2216, 2004 WL 937287, ¶ 31–35; *State v. Widder*, 9th Dist. No. 21383, 2003-Ohio-3925, 2003 WL 21697868, ¶ 1–14; *Dayton v. Combs* (1993), 94 Ohio App.3d 291, 296, 640 N.E.2d 863.

### (3) A.L.'s extrajudicial statements

{¶ 52} At trial A.L. testified in detail about the four incidents in which Richcreek assaulted her. Prosecution witnesses King and Butler were then allowed to repeat what she told them for the professed purpose of showing how they responded to the sexual-assault report. Richcreek argues that while A.L.'s statements were admitted for reasons other than the truth of their contents, the prosecutor later switched that use in closing argument, referring to King and Butler's testimony as if it were further proof in aid of A.L.'s own testimony.

{¶ 53} As it did with the hearsay involving A.M., the state now responds with a different justification for A.L.'s out-of-court statements than that which the prosecutor urged at trial. The state contends that her statements were admissible under Evid.R. 801(D)(1)(b) as prior consistent statements "offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." In support of this new theory, the state argues that during defense counsel's opening statement, he attacked A.L.'s credibility; therefore, to refute this challenge, the prosecutor had the right to introduce her prior statements. However, since the state never argued below that these statements comported with the criteria of Evid.R. 801(D)(1)(b), it has waived that argument on appeal. *State v. York,* 115 Ohio App.3d 245, 685 N.E.2d 261; *In re Banks,* 2008-Ohio-2339, 2008 WL 2043231.

{¶ 54} Even assuming this justification had been offered at trial, we find it unavailing for two reasons. First, if an out-of-court statement is admitted under either Evid.R. 801(D)(1)(a) or (b), it becomes *substantive evidence* in the case-in-chief to prove the elements of the offense. As we have already held with respect to A.M.'s extrajudicial statements, once a statement that would otherwise be pristine hearsay is admitted for some use *other than* as substantive evidence (i.e., other than for its truth-value), the prosecutor "must not later assert [such] statements for their truth during closing argument." *Kirk,* 2010-Ohio-2006, 2010 WL 1818894, at ¶ 28. During her closing argument here, the prosecutor did exactly that, relying in part on what A.L. told King and Butler as probative of Richcreek's guilt on the four counts involving her. This was improper and constitutes reversible error. Id.

{¶ 55} The second problem with the state's current argument is that it misconstrues the requirements of Evid.R. 801(D)(1)(b) in light of the specific assertions made in counsel's opening statement. By using the disjunctive "or," the rule distinguishes between a claim of "recent fabrication" and one which asserts an "improper motive" that existed antecedent to the statements asserted to be consistent.

{¶ 56} Defense counsel stated:

{¶ 57} "Now I expect the evidence is going to be that [Richcreek] was showered with attention to the exclusion—to the exclusion of the other girls. * * * [H]e got all the favorable attention and the girls were effectively shunned. * * * I expect the girls' mother * * * to come in [and] testify at length as to the motive for [A.L.'s] accusation. She's going to be into the issue of jealousy, and * * * this is not even remotely close to any ordinary sibling jealousy. This is something that has grown over the years and was never addressed and developed to a pathological level in this family. I think the evidence is going to show that it drove [both sisters] wild with jealousy and rage and that is, in fact, the motivation for these accusations."

{¶ 58} Counsel was asserting that the motive to fabricate (allegedly "pathological" jealousy over favorable parental treatment) developed years earlier, well *before* A.L. made her claims to King and Butler in February 2009. Evid.R. 801(D)(1)(b) does not allow *all* prior statements; rather, admission is restricted to "consistent statement[s] made by the witness prior to the time of the suggested invention *or of the emergence of the motive or influence to invent or falsify,* as tending to rebut the charge [of fabrication]." (Emphasis added.) *Motorists Mut. Ins. Co. v. Vance* (1985), 21 Ohio App.3d 205, 207, 486 N.E.2d 1206.

{¶ 59} The rule contains a timing component for prior statements in relation to a charge of "improper motive." That is, only prior consistent statements made *before* the alleged motive to fabricate arose are admissible. *Vance.* The issue is not when the charge was made, but when the improper motive arose. If "the facts giving rise to the motive to falsify existed *before* the disputed consistent statements," then Evid.R. 801(D)(1)(b) does not apply and the statements are inadmissible. *State v. Smith* (1986), 34 Ohio App.3d 180, 191, 517 N.E.2d 933; see also *State v. Nichols* (1993), 85 Ohio App.3d 65, 71, 619 N.E.2d 80, and *State v. Lopez* (1993), 90 Ohio App.3d 566, 578–579, 630 N.E.2d 32.

{¶ 60} The state contends that a general challenge to the victim's credibility by defense counsel permits the prosecutor to introduce her prior consistent statements, citing *State v. Britta,* 11th Dist. No. 2009–L–017, 2010-Ohio-971, 2010 WL 891357, and other cases. While it is true that those cases have so held, their holdings are context-specific to the asserted motive, fabrication, or improper influence and the timing of the prior statements involved. In *Britta,* for example, defense counsel suggested that the victim's family had "concocted a story" of sexual abuse and manipulated the course of the police investigation. Id. at ¶ 86–91. Yet *Britta* supports our analysis of Evid.R. 801(D)(1)(b) here, in that the Eleventh District excluded a nurse's testimony recounting what the victim said during an interview because the statements were made *after* the improper family influence occurred. Id. at ¶ 96.

{¶ 61} Moreover, it would vitiate the rule to hold that anything said in an opening statement that touches on the declarant's axiopisty automatically makes *all* her prior statements admissible. Thus, this new argument is unpersuasive even if it had been raised below.[5] It was reversible error to have allowed King and Butler to repeat A.L.'s out-of-court statements for a nonhearsay purpose but then to permit those same statements to be used or relied on for a substantive purpose. *Kirk*, 2010-Ohio-2006, 2010 WL 1818894.

### (4) Hearsay in Documents

{¶ 62} On appeal, Richcreek maintains that it was prejudicial error for the court to admit A.L.'s police report (Exhibit 8) and the search warrant that Detective Gross executed at Richcreek's residence (Exhibit 3). Although defense counsel failed to object to the admission of these documents during trial, a reviewing court has discretion to engage in a plain-error review under Crim.R. 52(B). *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 45; *State v. Endicott* (1994), 99 Ohio App.3d 688, 694, 651 N.E.2d 1024. See also Evid.R.103(D). Such a review involves three conditions:

{¶ 63} " 'First, there must be an error, *i.e.*, a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' " *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16.

{¶ 64} We will address A.L.'s police report first. This report contained her descriptions of the alleged rapes of January 30 and February 2, 2009. To Richcreek's argument, the state offers two responses. First, it urges that A.L.'s statements in the report were prior consistent statements under Evid.R. 801(D)(1)(b) and were properly admitted on that basis. This contention is without merit for the same reasons that King and Butler's hearsay testimony was inadmissible under that rule. Second, the state replies that even if the report was inadmissible, it was merely "cumulative in nature" and harmless.

{¶ 65} Evid.R. 803(8)(b) states:

---

5. A review of the hearsay testimony from King and Butler suggests that the state's purpose in offering it was less to explain their responsive action and more to bolster A.L.'s credibility. Such bolstering testimony, however, is improper. See *State v. Yarber* (1995), 102 Ohio App.3d 185, 193–195, 656 N.E.2d 1322. It does not escape being hearsay under Evid.R. 801(C) precisely because it was used to prove the truth of what that testimony asserted—here, the substance of A.L.'s own testimony. Id. at 190–193, 656 N.E.2d 1322; *State v. Williams* (1988), 38 Ohio St.3d 346, 348, 528 N.E.2d 910.

{¶ 66} "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth * * * (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

{¶ 67} Here, A.L.'s trial testimony did not differ in any material respect from the description she provided in her report. Detective Gross did not make the report. It is a handwritten statement by A.L. describing two of the four alleged rapes. She was plainly under no official "duty" to give any statement, a condition that Evid.R. 803(8) requires. *State v. York,* 115 Ohio App.3d at 248–249, 685 N.E.2d 261; *State v. Settles* (Sept. 30, 1998), 3d Dist. No. 13–97–50, 1998 WL 667635. Yet her statements in the report were used for their substantive truth-value and were thus hearsay.

{¶ 68} Unless offered by the defendant, Evid.R. 803(8) expressly prohibits the state from using in its case-in-chief statements found in police records or reports (or portions thereof) from persons under no official duty to furnish or record information, such as witnesses or victims. *York; State v. Spinks* (1992), 79 Ohio App.3d 720, 729, 607 N.E.2d 1130.

{¶ 69} Here, defense counsel plainly did not "offer" the report, despite using it during cross-examination. That impeachment use, however, did not thereby render it admissible. Combined with the improper hearsay testimony from King and Butler, the erroneous admission of the report was not "cumulative," but prejudicial. It reinforced, by means of an official document, the content of her statements there and those that King and Butler repeated. *State v. McKinney,* 3d Dist. No. 4–04–12, 2004-Ohio-5518, 2004 WL 2334318, ¶ 53–55.

{¶ 70} We turn now to the admission of the search warrant. This hearsay challenge is directed to Gross's affidavit on which the search warrant is based. Richcreek argues that it contains double inadmissible hearsay: Gross's own out-of-court narrative, which repeats A.L.'s accusatory statements. Richcreek contends that he was prejudiced because the "formalized setting" of the detective's affidavit and the judge's approval of the warrant amplified the credibility of A.L.'s claims. The state responds that whether the judge's signature enhanced the warrant's probative value in the jury's eyes is speculation.

{¶ 71} In *State v. Williams* (1996), 115 Ohio App.3d 24, 684 N.E.2d 358, the Eleventh Appellate District found prejudicial error in the trial court's admission of a search warrant and the supporting transcript at the jury trial of a murder defendant. The warrant had been executed during a drug raid at the defendant's residence in which a gunfight with police ensued. Both documents contained

hearsay statements about a drug informant. No cautionary instruction was given to the jury restricting how such statements were to be considered. Id. at 39, 684 N.E.2d 358.

{¶ 72} The *Williams* court stated:

{¶ 73} "A review of the search warrant and the transcript indicates that both documents had many statements which could possibly have been prejudicial to appellant. For example, the affidavit accompanying the search warrant contained statements indicating that the officers' informant had twice purchased crack cocaine at the Oak residence from a male named 'Jodi.' Without the cautionary instruction, there is the possibility that the jury might have considered the statements for the truth of the matter asserted, *i.e.*, the jury could have concluded that the statements showed that appellant was a person of bad character who, for that reason alone, was guilty of the charged offenses." Id. at 39, 684 N.E.2d 358.

{¶ 74} Ordinarily Gross's own statements in the affidavit that merely explained the actions he took based on what he learned during his investigation would not be hearsay. See, e.g., *State v. Thomas* (1980), 61 Ohio St.2d 223, 232, 400 N.E.2d 401. However, A.L.'s allegations, which Gross repeated in the affidavit, were hearsay and went wholly to the elements of the rape counts involving her. Without some cautionary instruction from the court restricting the jury's use of these statements to a nonsubstantive purpose, the warrant and the attached affidavit should not have been admitted. Evid.R. 105; *Williams*, supra. The potential for prejudice was heightened because A.L.'s accusations appear in a document that exudes an official formality and bears the imprimatur of a judge's signature.

{¶ 75} Based upon the foregoing, we further conclude that the errors in admitting A.L.'s police report and the search warrant affected a substantial right, and thus plain error occurred. *Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306.[6]

{¶ 76} Generally, the admission of an isolated hearsay statement may be deemed harmless error. Evid.R. 103(A); Crim.R. 52(A). This conclusion is typically appropriate when there is substantial and independent *admissible* evidence, other than the hearsay, to prove the elements of the crime. However, notwithstanding A.L.'s own testimony, the amount of inadmissible, or improperly used, hearsay in this case is significant. Multiple witnesses who repeat the same

---

6. Under the fourth assignment of error, Richcreek's appellate counsel argues that defense counsel's failure to object to the search warrant constituted ineffective assistance. Our present analysis and disposition of the hearsay issue involving the warrant under the third assignment render moot that same issue under the fourth assignment.

extrajudicial statements in court merely create a prejudicial reinforcing effect. A disputed statement is not made true simply because it is repeated. Cf. *State v. Butcher*, 170 Ohio App.3d 52, 2007-Ohio-118, 866 N.E.2d 13, ¶ 78–79.

{¶ 77} Given the errors identified herein, we turn to the final question of whether, in totality, the erroneously admitted hearsay was prejudicial or harmless. In *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311, the Ohio Supreme Court established the standard applicable in criminal cases:

{¶ 78} "In the final analysis, the evidence in favor of conviction, absent the hearsay, must be so overwhelming that the admission of those statements was harmless beyond a reasonable doubt." Id. at 284, 513 N.E.2d 311.

{¶ 79} On the four counts involving A.L., the admissible evidence was not overwhelming. The determining issue here was A.L.'s credibility. There were no eyewitnesses and no independent proof of her claims. The forensic analysis on her clothing revealed nothing. Other physical evidence, such as the bruising noted in the composite hospital report, was ambiguous, given the admitted "wrestling" in which she and Richcreek apparently engaged. The effect of the hearsay evidence, through the conduits of King and Butler and the documents, was to bolster her credibility. *State v. Yarber*, 102 Ohio App.3d 185, 656 N.E.2d 1322. On the record here, we cannot conclude that the improper hearsay was harmless beyond a reasonable doubt. *Kidder*, 32 Ohio St.3d 279, 513 N.E.2d 311.

{¶ 80} Accordingly, to the extent of our foregoing rulings on the hearsay issues involving both A.M. and A.L., we find the third assignment of error well taken.

{¶ 81} Richcreek's first and second assignments of error state:

{¶ 82} "I. The trial court erred in denying appellant's Crim.R. 29 motion for acquittal.

{¶ 83} "II. The verdict concerning the sole count of rape in case number 09CR124 was not supported by sufficient evidence in violation of appellant's right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution."

{¶ 84} These assignments challenge the sufficiency of the evidence to support Richcreek's conviction only as to the rape count involving A.M. (case No. 2009CR0124). A motion for acquittal under Crim.R. 29(A) is reviewed de novo by this court as a question of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541. The motion is tested against the same standard used to determine whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37; *State v. Nuhfer*, 6th Dist. No L–07–1125, 2009-Ohio-1474, 2009 WL 806905, ¶ 25. As we stated in *Nuhfer*: "[T]he court must determine whether the evidence submitted is

legally sufficient to support all of the elements of the offense charged. * * * The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt." Id. at ¶ 34.

{¶ 85} R.C. 2907.02(A)(2) provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 86} R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

{¶ 87} On the force component of R.C. 2907.02(A)(2), the Ohio Supreme Court has held that " '[f]orce need not be overt and physically brutal * * *. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.' " *State v. Eskridge* (1988), 38 Ohio St.3d 56, 58–59, 526 N.E.2d 304.

{¶ 88} Richcreek contends that because no admissible evidence was presented on the element of "force" (or "threat of force") on the charge involving A.M., his motion for acquittal should have been granted. The state counters that sufficient evidence for that element can be found in the testimony of Bissett and Bernhard—testimony that the state presently contends is admissible as substantive proof under one of the hearsay exceptions previously discussed. Both parties, in arguing for and against sufficiency, are essentially rearguing their positions on the primary admissibility of A.M.'s out-of-court statements in relation to the force element. Given our ruling on that issue under the third assignment of error, the state's position on sufficiency is unavailing.

{¶ 89} The hearsay testimony from Bissett, Bernhard, and the other four prosecution witnesses, as we have said, was admitted in the state's case-in-chief for the nonsubstantive purpose articulated by the prosecutor, rendering it nonhearsay for that purpose only. As received, their repetition of her statements had no substantive evidentiary value going to the elements of the offense. A.M. might have given sufficient substantive testimony about her alleged rape, but once on the stand she denied that forcible intercourse had occurred. The prosecutor then attempted (albeit improperly) to impeach her credibility with these same extrajudicial statements. While impeaching statements are not hearsay, neither are they substantive proof. *State v. Kline*, 11 Ohio App.3d, at 211, 464 N.E.2d 159; *State v. Parsons*, 2004-Ohio-2216, 2004 WL 937287, at ¶ 35. The particular testimony cited by the state does not establish the element of force. It could not be considered for its truth when admitted or relied upon later as proving that element. *Kirk*, 2010-Ohio-2006, 2010 WL 1818894. Thus, without affirmative proof of forcible sexual conduct, the evidence on the rape count

involving A.M. was insufficient to convict. It follows that the trial court erred in denying Richcreek's Crim.R. 29 motion for acquittal on that sole count.

{¶ 90} Accordingly, the first and second assignments of error are well taken.

{¶ 91} The fifth assignment of error states:

{¶ 92} "V. The trial court erred in admitting testimony concerning a police officer's opinion of the truthfulness of the appellant when questioned about the allegations of rape."

{¶ 93} The evidentiary issue on which the fifth assignment is based arises from Detective Gross's execution of the search warrant at Richcreek's residence. The warrant sought items of evidence supporting A.L.'s allegations. During the search, Gross encountered Richcreek in his room in the basement. A stun gun, allegedly used to threaten one of the victims, was seized there. The testimony to which defense counsel objected pertained to Gross's conversation with Richcreek during the search of his room. Specifically, Gross testified:

{¶ 94} "Q. You indicated you had an opportunity to speak with [Richcreek]?

{¶ 95} "A. Yes.

{¶ 96} "Q. And what, what did you discuss with [him]?

{¶ 97} "A. Explained to him the [rape] allegation that had been made by one of the girls, didn't specifically go into which child it was that had made the allegation. He denied it. *Asked him why somebody would make that type of an allegation to hurt him if it's not a true allegation. He walked around that conversation and denied having sex with any of the girls.*" (Emphasis added.)

{¶ 98} Gross further testified that Richcreek admitted that "he does wrestle with the girls." On redirect examination, Gross testified:

{¶ 99} "Q. Can you describe [Richcreek's] body actions when you were executing a search warrant in the basement?

{¶ 100} "A. Moved quite a bit.  * * * *[J]ust his actions to me from people that I've interviewed over the years and my training indicate that he was being deceptive with me, and that he was more being providing half truths* [sic]." (Emphasis added.)

{¶ 101} Counsel's objection here was overruled. Gross was further permitted to testify:

{¶ 102} "A. * * * [Richcreek] was moving around. He was looking away. He was very vague with his answers. *And in my experience* it was, it wasn't one where he was looking eye to eye and trying to make contact and trying to convey his message. *He was deceptive. He was looking away and being very vague and general about answers that he was providing.*" (Emphasis added.)

{¶ 103} Richcreek contends that this testimony essentially told the jury that as an experienced police officer, Gross believed that Richcreek was lying in denying the rape claim, leaving the jury to infer that the claim was true. In response, the state suggests that even if there was error in allowing such testimony, it "was harmless error in light of the overwhelming evidence [of] Richcreek's guilt." We disagree.

{¶ 104} In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, the Ohio Supreme Court held that a witness may not express his belief or opinion as to the credibility of another witness. Id. at 128–129, 545 N.E.2d 1220. *Boston* involved allegations of sexual assault on a child in which the treating physician was allowed to state her opinion of the child's veracity, in effect "declar[ing] that [the child] was truthful in her statements." Id. The Supreme Court found that "the admission of this testimony was not only improper—it was egregious, prejudicial and constitutes reversible error." Id.

{¶ 105} Later, in *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, the Supreme Court again held that a detective's testimony that the accused " 'was being very deceptive' " was inadmissible. Id. at ¶ 121–123 (citing *Boston* ).

{¶ 106} In *State v. Hensley,* 6th Dist. No. L–03–1005, 2005-Ohio-664, 2005 WL 388699, this court found reversible error when a police detective testified about the truthfulness of a witness, stating:

{¶ 107} "It is well-established that a witness may not express his or her belief or opinion as to the credibility of another witness. * * * When a witness expresses an opinion as to the veracity of another witness, it has the effect of acting as a 'litmus test' on the key issue in the case and infringing on the role of the fact finder, 'who is charged with making determinations of veracity and credibility.' * * * *This is particularly true when an investigating police officer expresses an opinion as to whether a witness is being truthful.*" (Emphasis added.) Id. at ¶ 38.

{¶ 108} Given the foregoing precedent, it was error to permit Gross to testify that Richcreek was being "deceptive" and thus impliedly untruthful. The state is correct that *Boston* violations are subject to harmless-error review under Crim.R. 52(A). *State v. Allen,* 8th Dist. No. 92482, 2010-Ohio-9, 2010 WL 27548, ¶ 50–51. However, we cannot say beyond a reasonable doubt that allowing the jury to hear Gross's testimony regarding Richcreek's "deceptive" responses was harmless. For better or worse, jurors view police officers as expert witnesses and give substantial weight to their opinions, particularly where the opinion is couched in terms of "previous experience with other cases." *State v. Kovac,* 150 Ohio App.3d 676, 2002-Ohio-6784, 782 N.E.2d 1185, ¶ 38 (quoting *State v. Miller* (Jan. 26, 2001), 2d Dist. No. 18102, 2001 WL 62793). *Boston* violations

are more likely to be prejudicial in the context of a jury trial where the case "[is] essentially a 'credibility contest' between the victim and the defendant without independent evidence of the alleged crimes." *Kovac* at ¶ 40; *State v. Burrell* (1993), 89 Ohio App.3d 737, 746, 627 N.E.2d 605.

{¶ 109} In this case, there were two victims. As Gross indicated in the testimony quoted above, he was intentionally vague about which sister he was referring to when he confronted Richcreek with the rape allegation. Arguably, his "deceptiveness" opinion affected the counts involving both girls. However, given our ruling that the evidence on A.M.'s count was insufficient to support a conviction, it is a moot point whether Gross's opinion further prejudiced the jury on that count. But to the extent the jury inferred truthful substance from his opinion as to the four counts involving A.L., its effect was prejudicial, for without it and without King and Butler's hearsay testimony, the prosecution's case rested on A.L.'s credibility. Accordingly, the fifth assignment of error is well taken.

{¶ 110} The fourth, sixth, seventh, and eighth assignments of error state:

{¶ 111} "IV. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio.

{¶ 112} "VI. The trial court erred in imposing consecutive sentences upon appellant by making R.C. 2929.14(E)(4) findings in violation of *State v. Foster*.

{¶ 113} "VII. The trial court erred in imposing costs in the sentencing entries where it failed to do so orally at the sentencing hearing.

{¶ 114} "VIII. Appellant was deprived of a fair trial because of cumulative error in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution."

{¶ 115} Given our previous disposition of the first, second, third, and fifth assigned errors, the remaining assignments have been rendered moot and need not be addressed. See App.R. 12(A)(1)(c).

{¶ 116} On consideration whereof, the judgment of the Wood County Court of Common Pleas is hereby reversed.

{¶ 117} As to case No. 2009CR0124, appellant is ordered discharged as to the single count therein pertaining to A.M.

{¶ 118} As to the single count in case No. 2009CR0125 pertaining to A.L., and the four counts in case No. 2009CR0375 pertaining to A.L., the judgments of conviction are reversed, the sentences vacated, and the cases remanded to the

trial court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments reversed.

PIETRYKOWSKI and SINGER, JJ., concur.