[Cite as *State v. Fulton*, 2022-Ohio-4323.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 9-22-05

    v.

RODNEY D. FULTON,                **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 2019-CR-0069

Judgment Affirmed

Date of Decision: December 5, 2022

APPEARANCES:

    *Stephen P. Hardwick* **for Appellant**

    *Jocelyn Stefancin* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Rodney Fulton ("Fulton") brings this appeal from the judgment of the Court of Common Pleas of Marion County finding him guilty of multiple felonies and sentencing him to an aggregate prison term of 41 years to life. On appeal, Fulton challenges the denial of the admission of evidence and the sentence imposed. For the reasons set forth below, the judgment is affirmed.

*Procedural History*

{¶2} On February 21, 2019, the Marion County Grand Jury indicted Fulton on one count of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. Doc. 1. Fulton entered a plea of not guilty to the charge. Doc. 6. On May 29, 2019, a superseding indictment was filed and charged Fulton with the following counts: 1) rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree; 2) rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree; 3) abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree; 4) gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree; and 5) sexual battery in violation of R.C. 2907.03(A)(5), a felony of the second degree. Doc. 19. Fulton subsequently entered pleas of not guilty to all counts. Doc. 23.

{¶3} A jury trial was held from July 30 to August 3, 2020. The jury found Fulton guilty of all counts of the indictment. Doc. 164-168. The trial court held a sentencing hearing on September 3, 2020. Doc. 181. After a discussion amongst

the parties and the trial court, Count 2 (rape) and Count 3 (abduction) were found to be allied offenses of similar import causing the offenses to merge. Doc. 181. The State elected to proceed to sentencing with Count 2. Doc. 181. The trial court then imposed the following prison sentences on Fulton: Count 1 – 15 years to life; Count 2 – 15 years to life; Count 4 – 48 months; and Count 5 – 7 years. Doc. 181. The trial court then ordered that the sentences be served consecutively for an aggregate prison term of 41 years to life. Doc. 181.

{¶4} On January 25, 2020, Fulton, with leave of this Court, filed a delayed appeal. Doc. 186. Fulton raises the following assignments of error on appeal.

## First Assignment of Error

**The trial court erred by refusing to allow [Fulton] to ask, on cross-examination, whether [Fulton] reacted to the deputy's allegation of sexual abuse by exclaiming "Oh, my God. Give me a DNA test."**

## Second Assignment of Error

**The trial court's findings clearly and convincingly do not support consecutive sentences.**

### *Hearsay Evidence*

{¶5} In the first assignment of error, Fulton claims that the trial court erred in refusing to allow him to ask the deputy about a statement made by Fulton on the grounds of hearsay. A trial court has broad discretion over the admission or exclusion of evidence and the decision will not be reversed on appeal absent an abuse of discretion and a showing of material prejudice. *State v. Wendel,* 3d Dist.

Union No. 14-16-08, 2016-Ohio-7915, 74 N.E.3d 806. "Material prejudice occurs when, after weighing the prejudicial effect of the errors, we are unable to find that without the errors, the fact finder would probably have reached the same decision." *Id*.

**{¶6}** Fulton argues in this case that the trial court erred by denying him the opportunity to question Deputy Craig Layne ("Layne") about a statement made by Fulton requesting a DNA test after Layne testified that Layne had been the one to request the DNA test. The trial court's ruling was based on the fact that Fulton's statement was hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

**{¶7}** At trial, Layne testified that he had brought up the idea of a DNA test. Tr. 594. On cross-examination, Fulton's counsel attempted to question Layne about whether Layne raised the idea or whether Fulton had done so. Tr. 599-600.

> **Q. But he was accused for the first time in front of you of raping a child.**
>
> **A. Uh-huh.**
>
> **Q. He had quite a reaction, didn't he?**
>
> **A. Yes, he did.**
>
> **Q. He was going, "Oh, my God. Oh, my" –**
>
> **Mr. Scott: Objection, Your Honor.**

Tr. 599-600. The State argued that this was asking for a hearsay statement because it was asking the witness what Fulton had said. Fulton's counsel argued that he was trying to show that Fulton had stated "Oh, my God. Give me a DNA test." Tr. 601. According to counsel, this request was the first time the idea of a DNA test was raised and it was Fulton who did so as was shown on the tape of the interview. Tr. 601. The trial court agreed with the State and sustained the objection.

{¶8} Generally, hearsay statements are not admissible, unless an exception applies. Evid.R. 802. The statement in question here was clearly an out of court statement offered to prove the truth of the matter asserted, i.e. that Fulton was the one to raise the idea of a DNA test. It was not an admission offered by Layne against Fulton, which would not have been hearsay. Evid.R. 801(D)(2). Thus, the trial court could conclude that the statement was a hearsay statement.

{¶9} Fulton claims on appeal that the statement was not a hearsay statement because it was an excited utterance. An "excited utterance" is one "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). Excited utterances are exceptions to the hearsay rule. Evid.R. 803. This court notes that Fulton did not argue that the statement was an excited utterance to the trial court. "[I]t is a cardinal rule of appellate procedure that a party cannot assert new legal theories for the first time on appeal." *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, ¶ 33, 964 N.E.2d 442 (6th Dist.). The failure to raise at trial that a statement

was an excited utterance and thus not subject to the hearsay rule results in a waiver of the issue for appeal. *State v. York*, 115 Ohio App.3d 245, 249, 685 N.E.2d 261 (4th Dist. 1996). Since Fulton failed to raise this issue during trial, he may not now argue for the first time that the statement was admissible as an excited utterance.

{¶10} Even if we were to find that the statement was an excited utterance, and thus admissible, it would not necessarily result in a prejudicial error. The statement in question here was regarding who suggested the DNA test. This was not a material fact, but was instead attempting to be used to impeach the credibility of Layne who claimed he was the one who suggested the test. The jury heard the testimony of the victim who identified Fulton as the person who lived with her grandmother and the person who raped her. The victim however was not able to identify Fulton in the courtroom as he had changed his appearance. Fulton does not raise any alleged error with the victim's testimony. Layne's testimony was merely to identify Fulton, as he appeared in the courtroom, as the same person he interviewed as a suspect in response to the allegations made. Thus, no prejudice resulted from the trial court's ruling. The first assignment of error is overruled.

*Sentencing*

{¶11} Fulton claims in his second assignment of error that the trial court's findings in regards to consecutive sentences are not supported by the record. R.C. 2929.14 provides in pertinent part as follows.

**(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:**

**(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

**(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

**(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

R.C. 2929.14(C).

{¶12} Fulton argues that since he was sentenced to life in prison under R.C. 2971.03, consecutive sentences offer no additional protection to the public and are irrational. Fulton was convicted of two counts of violating R.C. 2907.02(A)(1)(b) – rape where the victim was under the age of 13. R.C. 2907.02(A)(1)(b). "Except as otherwise provided in this division, notwithstanding sections 2929.11 to 2929.14 of the Revised Code, an offender under division (A)(1)(b) of this section shall be sentenced to a prison term or term of life imprisonment pursuant to R.C. 2971.03 of

the Revised Code." R.C. 2907.02(B). An offender convicted of raping a child under the age of 10 years of age who was not sentenced to a prison term of life without the chance of parole, is to be sentenced to a minimum prison term of fifteen years to a maximum of life imprisonment. R.C. 2971.03(B)(1)(b). The trial court properly imposed this sentence for the two rape convictions given that the victim was under the age of ten when the offenses occurred. Likewise, the convictions for gross sexual imposition and sexual battery were also within the statutory range. Fulton does not argue that the sentences were not appropriate, only that the trial court erred in ordering them to be served consecutively.

{¶13} Fulton claims that since he had already been sentenced to a term of life in prison, consecutive sentences provided no additional protection to the general public. However, the life sentence was the maximum sentence, not the minimum.[1] If the sentences were to be ordered to be served concurrently, then Fulton potentially could have been released after 15 years in prison. The trial court determined that Fulton should only be eligible for parole after he had served 41 years. The length of the minimum sentence is within the trial court's sole discretion to determine as long as the sentences are within the statutory ranges. *State v. Davis*, 3d Dist. Auglaize No. 2-11-06, 2011-Ohio-5441. The trial court made the required findings pursuant to R.C. 2929.14(C) and the findings were supported by the record. Thus, this Court

---

[1] If the sentences imposed were life without the possibility of parole, the issue of consecutive sentences would be moot as the decision would have no practical affect since one cannot serve a sentence after the person has died. *State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613, ¶ 7.

finds no error in the trial court's determination that consecutive sentences were necessary to protect the public and punish the offender for the multiple offenses. The second assignment of error is overruled.

**{¶14}** Having found no error prejudicial to the Appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Marion County is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/hls**