[Cite as *State v. Pierce*, 2022-Ohio-3912.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110791 |
| v. | : | |
| PHILLIP PIERCE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 3, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-651185-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Eben O. McNair, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Phillip Pierce, appeals his convictions following a jury trial. For the reasons that follow, we affirm.

{¶ 2} In June 2020, Pierce was named in a five-count indictment charging him as follows: Count 1, rape in violation of R.C. 2907.02(A)(2) (vaginal

penetration); Count 2, rape in violation of R.C. 2907.02(A)(2) (anal penetration); Count 3, rape in violation of R.C. 2907.02(A)(2) (fellatio); Court 4, kidnapping, in violation of R.C. 2905.01(A)(4); and Count 5, assault, in violation of R.C. 2903.12(A).

{¶ 3} On April 28, 2021, a jury trial commenced. After the close of evidence and following a *Howard* charge, the jury returned a verdict of not guilty of vaginal rape, as charged in Count 1, and guilty of assault, as charged in Count 5. The court declared the jury hung on Counts 2, 3, and 4.

{¶ 4} On July 6, 2021, the court renumbered the indictment to read that Count 1 charged Pierce with rape in violation of R.C. 2907.02(A)(2) (anal penetration); Count 2, rape, in violation of R.C. 2907.02(A)(2) (fellatio); and Count 3, kidnapping, in violation of R.C. 2905.01(A)(4). The following day, a second jury trial commenced on those remaining counts, and the following evidence was presented.

{¶ 5} Donna Majoros, a 911 dispatch operator, testified that around 5:00 a.m. on June 14, 2020, she received a call from an unknown caller reporting an assault in a nearby apartment. The state played the 911 call for the jury. The jury heard the unidentified caller saying that someone was getting "whupped" and "torn up." *See* exhibit No. 22; tr. 567.

{¶ 6} Euclid Police Officer Nicholas Eddington testified that he was dispatched for a disturbance to an apartment complex on Sidney Drive in Euclid, Ohio. He stated that it was unknown which apartment the disturbance was coming

from, so he shined his flashlight into windows. In doing so, he noticed movement of some curtains in a specific apartment and shined his flashlight through that apartment's front-door glass window. He said that he saw a female, later identified as the victim, running down the stairs of the apartment. Officer Eddington testified that when she opened the door, she was yelling and sobbing uncontrollably. He stated that the victim's face was swollen and he observed scratches on her cheek. According to the officer, the victim then collapsed onto the floor, curled up into the fetal position, and continued crying. He stated that the victim was only wearing a pink tank top that was wet around the chest area.

{¶ 7} Officer Eddington testified that while he was talking to the victim, a male, later identified as Pierce, casually walked down the stairs wearing only boxer shorts. The officer said that he detained Pierce for safety purposes and placed him in the back of a police cruiser. Officer Eddington testified that after speaking with the victim, he learned that she and Pierce were dating. Based on additional information received from the victim, Officer Eddington advised Pierce that he was under arrest for rape.

{¶ 8} The victim testified that on the morning of June 14, 2020, she was physically assaulted and raped by Pierce, her on-and-off boyfriend. She stated that on June 13, she picked him up from his house and drove them back to her house for the purposes of "hanging out." The victim testified that they were watching television, drinking alcohol, and smoking marijuana. She said that Pierce was drinking excessively. The victim stated that she did not feel well and wanted to go

to bed upstairs, but Pierce wanted to have sex — she did not. The victim testified that she went upstairs and Pierce followed her, telling her that if they did not have sex, he would "beat [my] ass." (Tr. 633.) She stated that she engaged in sexual conduct with Pierce out of fear. According to the victim, the activity began with her giving him fellatio, but she stated that Pierce was acting aggressively by holding her head and pushing it down. She stated that Pierce kept telling her to "do it right," and even though she did not want to do it at all, she "only did it so he [would not] hurt [her]." (Tr. 634.)

{¶ 9} The victim testified that after forcing her to perform fellatio, Pierce told her that he wanted anal intercourse. She said that she did not want to engage in this conduct. The victim testified that as he was aggressively having anal sex with her, she vomited and screamed that she did not want to do it. According to the victim, Pierce threatened that if she did not engage in this sexual activity, she would "suffer the consequences" by getting her "ass beat." (Tr. 635.) The victim testified that after Pierce ejaculated, she attempted to lie down, but Pierce told her that he was going to have sex with her again. She stated that she tried to leave the room, but Pierce grabbed her, threw her on the floor, and proceeded to punch, smack, kick, and choke her while telling her that he was going to "kill her." (Tr. 637.) The victim testified that the police arrived during this physical assault, and she ran down the stairs and told the officer Pierce had assaulted and raped her.

{¶ 10} The victim testified that she was transported by ambulance to the hospital where a rape kit was performed. Additionally, she identified the

photographs that Euclid police officers took, which she said accurately depicted the injuries she sustained from Pierce, and the wetness on her tank top, which according to the victim was from vomit. The victim also told the jury that after Pierce was arrested, she started receiving phone calls from Pierce's family members asking her to help them get Pierce out of jail.

{¶ 11} Melissa Wilhelm, a forensic scientist in the DNA section of the Ohio Bureau of Criminal Investigation, testified that DNA evidence from the victim's rape kit was compared with a DNA standard from Pierce. She testified that the vaginal, perianal, labia, and thigh samples taken from the victim contained a male DNA profile that was consistent with Pierce's DNA.

{¶ 12} Jennifer Kroczak, a detective from the city of Euclid, testified that she was assigned the case following Pierce's arrest. She testified that she reviewed dash camera footage from inside the zone car when Pierce was transported to the county jail. The state played a portion of that recording — exhibit No. 27 — for the jury. Over objection, Detective Kroczak repeated statements that Pierce made during the video, including his disbelief of being charged with rape when the victim is his girlfriend and they engage in sexual activity.

{¶ 13} Detective Kroczak testified that she also obtained and listened to recordings of phone calls Pierce made from the county jail after he was arrested. The state played the agreed-upon portions of those calls — exhibit Nos. 24, 25, 26 — for

the jury.[1] Over objection, Detective Kroczak testified as to what she heard when the state played the jail calls for the jury. Specifically, she testified as to the "gist" of one of Pierce's conversations where she claimed that Pierce stated that he would pay the victim because he cannot "be messing with this rape charge." (Tr. 686.) The detective also testified that Pierce could be heard on the calls "encouraging [others] to contact [the victim], to go to Euclid, meaning the police, and recant her accusation." (Tr. 687-688.) On cross-examination, Detective Kroczak stated that her interpretation of Pierce's jail calls was that he wanted the victim to "recant" her statement, even though Pierce was actually saying in the jail calls "drop the charges." (Tr. 702.)

{¶ 14} Pierce testified in his defense. He admitted that he and the victim were at the victim's house, drinking and smoking. He stated that the victim had more to drink than what she said during her testimony. Pierce stated that during the evening he and the victim argued about him engaging in sexual conduct with another female. According to Pierce, the victim went upstairs because she was upset. After ten minutes, he went upstairs and according to Pierce, they engaged in consensual anal intercourse. He said that after he ejaculated, the victim consensually performed fellatio. He stated that during this conduct, the victim began to use her teeth, causing him to push her off of him. Pierce testified that he told her that she was "not doing it right," and knew "another girl who could do it

---

[1] From the transcript, it appears that defense counsel agreed that only certain relevant and admissible portions of the jail calls would be played for the jury. *See* tr. 679-680.

better." (Tr. 729-730.) According to Pierce, the victim then hit him with a glass candle and a physical altercation ensued between them. He denied raping the victim, but maintained that they engaged in consensual sexual conduct, including both fellatio and anal intercourse.

{¶ 15} The trial court denied Pierce's renewed Crim.R. 29 motion for judgment of acquittal. The jury subsequently received its instructions and retired for deliberation. On July 12, 2021, the jury notified the court that they were hung on all three counts. Following the receipt of a *Howard* charge from the court, the jury returned a guilty verdict on all counts.

{¶ 16} The court sentenced Pierce under the Reagan Tokes Law. Accordingly, he received an indefinite sentence of 10 to 15 years on renumbered Counts 1, 2, and 3, and six months on the assault charge. All counts were ordered to run concurrently.

{¶ 17} Pierce now appeals, raising four assignments of error.

## I. Evidentiary Issues

{¶ 18} Pierce contends in his first assignment of error that the trial court erred in the admission of testimonial statements that did not qualify under any exceptions to the hearsay rule, in violation of his right to confrontation under the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, he contends that the trial court erred in allowing (1) hearsay statements through Officer Eddington's testimony; and (2) Detective Kroczak to interpret the jail calls.

## A. Hearsay Statements

{¶ 19} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Consequently, a statement is, by definition, not hearsay when it is offered for a purpose other than to prove the truth of the matter asserted. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118.

{¶ 20} One instance where testimony has been permitted as non-hearsay is when a police officer is offering testimony to explain "the next investigative step." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 186, citing *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27. When the testimony is being offered to explain why an officer took the next particular step in an investigation, it falls outside of the hearsay classification because it is not being offered for the truth of the matter asserted.

{¶ 21} The Ohio Supreme Court has cautioned, however, that "the well-worn phrase 'not offered for the truth of the matter asserted' is not a talismanic incantation that opens the door to everything said outside the courtroom." *Ricks* at ¶ 25, quoting *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶ 26 (6th Dist.). Testimony offered to explain police conduct is admissible as non-hearsay only if (1) the explained conduct is "relevant, equivocal, and contemporaneous with the statements; (2) the probative value of statements [is not] substantially outweighed by the danger of unfair prejudice; and (3) the statements cannot connect the accused with the crime charged." *Ricks* at ¶ 27.

{¶ 22} It is particularly important to emphasize that careful analysis of an officer's statement explaining "the next investigative step" is required when the officer's testimony touches on statements made by an individual who is not testifying because "[t]he Sixth Amendment to the United States Constitution guarantees an accused the right to confront witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). As a general rule, the Confrontation Clause is implicated by the admission of out-of-court statements that are testimonial in nature when the declarant does not testify in the proceeding. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309-310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

{¶ 23} In this case, Officer Eddington provided the following testimony regarding what steps he took during his investigation:

> [Officer Eddington]. I then went back down and assisted Officer Schwedt in speaking with the victim. And that's when I learned that — she was upset with her boyfriend — Mr. Pierce was her boyfriend, and they had been involved in a physical altercation. She stated that —
>
> [The Prosecutor]. Let me ask you a new question. Without telling us exactly what she told you, you touched on it a little bit, was she able to provide you a narrative of what happened to her that evening?
>
> A. Yes, she was.
>
> Q. Based on what she told you, what did you do?
>
> A. I went back out to the patrol car and advised Mr. Pierce that he was under arrest for rape.

(Tr. 579.)

> Q. You talked about only taking or only documenting injuries that someone indicates happened during the crime that you're

investigating. For each of these photographs, would someone have asked [the victim] either if this particular injury was caused that night by Mr. Pierce, or just indicate the injuries that were caused by Mr. Pierce, or something of that nature?

A. Yes.

(Tr. 602.) No objection was made regarding this testimony.

{¶ 24} Pierce contends that the trial court impermissibly allowed these statements made by the victim through Officer Eddington's testimony. According to Pierce the admission of this testimony warrants a reversal of his convictions. We disagree.

{¶ 25} We initially note that the victim testified at trial and was subject to cross-examination, thereby remedying any potential Confrontation Clause violation. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 127. Accordingly, this court is concerned only with whether the admission of the officer's testimony amounted to plain error. Notice of plain error is to be taken "with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23; *State v. West*, Slip Opinion No. 2022-Ohio-1556, ¶ 22.

{¶ 26} Even if this court were to find that Officer Eddington's testimony contained hearsay statements, Pierce's substantial rights were not affected and no miscarriage of justice occurred by the admission of the officer's statements because the victim testified that Pierce physically assaulted and raped her, and caused the physical injuries depicted in the photographs presented to the jury. Additionally,

Pierce admitted during his testimony that he and the victim got into a physical altercation. Based on the subsequent testimony by the victim and Pierce, Officer Eddington's testimony is duplicative and we find no error, plain or otherwise.

## B. Interpretation of Pierce's Jail Calls

{¶ 27} During Detective Kroczak's testimony, the state introduced and played exhibit Nos. 24, 25, and 26 — recordings of the phone calls Pierce made while he was in the county jail. Over objection, the detective was permitted to interpret or repeat what the detective believed Pierce said during the purported inaudible or incomprehensible portions of those calls. Without identifying what part of the jail calls were inaudible, incomprehensible, or violated the principles of inadmissible hearsay, Pierce generally contends that allowing the detective to give her own "slant" to the calls was improper and the testimony constituted inadmissible hearsay.

{¶ 28} We agree with Pierce that the best evidence is the jail calls themselves, and these calls were in fact provided to the jury during their deliberations. Accordingly, even if this court determined that Detective Kroczak's testimony constituted inadmissible hearsay, we find that the testimony is merely duplicative of the jail calls themselves, which were properly admitted into evidence. This court has held that recorded jail call statements are admissible under Evid.R. 801(D)(2)(a) — admissions by a party-opponent. *State v. Castellon*, 8th Dist. Cuyahoga No. 106813, 2019-Ohio-628; *see also State v. Wallace*, 8th Dist. Cuyahoga No. 109847, 2021-Ohio-4612, ¶ 34; *State v. Williams*, 38 Ohio St.3d 346, 528 N.E.2d 910 (1988) (erroneous admission of inadmissible hearsay that is cumulative to properly

admitted evidence constitutes harmless error). Because the jail calls were properly admitted as exhibits, the jury was able to independently listen to the calls and determine what Pierce said during those calls. Accordingly, the testimony from Detective Kroczak was, at best, harmless error because it was duplicative of other admissible evidence.

{¶ 29} Finally, we note that Pierce testified at trial. If Detective Kroczak's interpretation or testimony about the jail calls was incorrect, Pierce could have testified about the true meaning of the content of his jail calls. In fact, during his testimony, he admitted that he made the calls from the jail "to try to get people to get [the victim] to drop the charges" because he was "in jail on false charges." (Tr. 732.) Pierce's first assignment of error is overruled.

## II. Allied Offenses

{¶ 30} In his second assignment of error, Pierce contends that the trial court erred in failing to merge his convictions for rape and kidnapping, in violation of his rights against double jeopardy under the Fifth and Fourteenth Amendments to the United States Constitution.

{¶ 31} The allied offenses statute, R.C. 2941.25, codifies Ohio's double jeopardy protections regarding when multiple punishments may be imposed. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 12. Under the statute, where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment may contain counts for all such offenses, but the defendant may be convicted of only one offense. However, a

defendant charged with multiple offenses may be convicted of all the offenses if (1) the defendant's conduct constitutes offenses of dissimilar import, i.e., each offense caused separate, identifiable harm; (2) the offenses were committed separately; or (3) the offenses were committed with separate animus or motivation. R.C. 2941.25(B); *Ruff* at paragraph three of the syllabus. Thus, to determine whether offenses are allied, this court must consider the defendant's conduct, the animus, and the import. *Id.* at paragraph one of the syllabus.

{¶ 32} Pierce contends that his trial counsel failed to raise the issue of allied offenses of similar import, and thus our review is for plain error. *See Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 3 (plain error is that which affects the outcome of the proceedings, and should only be found in exceptional circumstances and to prevent a miscarriage of justice). Our review of the record, however, reveals that Pierce's counsel addressed the issue of allied offenses. *See* tr. 831-832. In this colloquy, Pierce's counsel arguably agreed that the offenses did not merge.

> I think it is probably legally correct that three things he has been convicted of you could — they do not merge and that you can theoretically run them consecutively. The maximum would be 33 years.
>
> I'm going to ask that this is a, essentially, single event with multiple legal implications, but the just thing to do would be to sentence these three counts, they're all first[-]degree felonies, concurrently.

(Tr. 831-832.) Accordingly, this court could perceive this alleged error as invited error.[2]

{¶ 33} This court finds no error, however, regardless of how the alleged error is reviewed on appeal. It is axiomatic that R.C. 2905.01, kidnapping, does not require movement of the victim. The act of restraint by "force, threat, or deception" is sufficient. R.C. 2905.01; *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 38, citing *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979). "[I]mplicit within every forcible rape is a kidnapping." *Logan* at 130. However, we must also look at the three *Ruff* factors in considering whether each offense: (1) caused separate identifiable harm (2) was committed separately, and (3) was committed with separate animus or motivation. An affirmative answer to any one of these questions results in denial of the merger. *Echols* at ¶ 25.

{¶ 34} In determining whether a separate animus existed with respect to Pierce's actions, we look at the guiding principles established in *Logan*. "The primary issue * * * is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." *Logan* at 135. Put another way, courts must ask "whether the victim, by such limited asportation or restraint, was subjected to a

---

[2] "'Invited' error is a doctrine that prevents a party from benefitting from an action that the party induced the court to make." *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 28 (8th Dist.), citing *State v. Smith*, 148 Ohio App.3d 274, 2002-Ohio-3114, 772 N.E.2d 1225, ¶ 30 (8th Dist.). In *James*, this court applied the invited error doctrine when defense counsel agreed that offenses do not merge for sentencing.

substantial increase in the risk of harm separate from that involved in the underlying crime." *Id.*

{¶ 35} In this case, Pierce contends that there was no asportation, no substantial harm apart from the rape, and no prolonged captivity. We disagree and find that Pierce engaged in conduct that created a substantially greater risk of harm to the victim by preventing her from leaving the bedroom and then subjecting her to additional acts of violence. The victim testified that after Pierce forced her to have both fellatio and anal intercourse, he told her that he was going to have sex with her again. She testified that she "tried to walk out of the room. And that's when he grabbed me, and he through [sic] me to the floor, and that's when he proceeded to punch me, and smack me, and choke me, and kick me in my head." (Tr. 636.)

{¶ 36} Based on the victim's testimony, we find that Pierce's convictions for rape and kidnapping were not allied offenses and thus, not subject to merger. The assignment of error is overruled.

## III. Effective Assistance of Counsel

{¶ 37} In his third assignment of error, Pierce contends that he was denied effective assistance of counsel, in violation of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution, because counsel failed to (1) object to the hearsay statements made by Officer Eddington; (2) impeach the victim's credibility; (3) object to Detective Kroczak's "interpretation" of Pierce's jail calls; (4) object to the trial court's failure to merge the kidnapping and

rape convictions; and (5) object to the imposition of the maximum sentence under the Reagan Tokes Law.

{¶ 38} Reversal of a conviction for ineffective assistance of counsel requires that the defendant show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *State v. Nieves*, 8th Dist. Cuyahoga No. 111161, 2022-Ohio-3040, ¶ 27, citing *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 109. Deficient performance occurs when counsel's performance falls below an objective standard of reasonable representation. *State v. Bell*, 8th Dist. Cuyahoga No. 105000, 2017-Ohio-7168, ¶ 23. Prejudice is found when "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### A. Hearsay Statements

{¶ 39} Pierce contends that defense counsel's failure to object to Officer Eddington's testimony relaying what he learned from the victim amounted to deficient performance because the testimony tended to bolster the victim's credibility. Having previously determined that Pierce's substantial rights were not prejudiced by the admission of Officer Eddington's statements, we similarly find that Pierce was not prejudiced by counsel's failure to object. Pierce has not demonstrated prejudice such that the result of the proceedings would have been different had counsel objected to Officer Eddington's testimony.

## B. Impeachment of Victim's Credibility

{¶ 40} Pierce contends that his trial counsel was ineffective for failing to impeach the victim's credibility by questioning her about her prior fourth-degree felony conviction for burglary. He claims that the use of the prior conviction would have adversely affected the victim's credibility.

{¶ 41} In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in any given case, and it must give great deference to counsel's performance. *Strickland* at 689. Counsel can provide effective assistance using a number of tactics, and even debatable trial strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). We find that counsel's decision to not impeach the victim with her prior conviction was a trial strategy that this court will not second-guess. A review of the record reveals that counsel chose to focus on the inconsistencies in the victim's recitation of the events and whether the sexual conduct was consensual. Accordingly, we cannot say that counsel's performance was deficient.

## C. Interpretation of Pierce's Jail Call

{¶ 42} Pierce contends that counsel's failure to object to Detective Kroczak's interpretation of his jail calls improperly bolstered the victim's credibility and adversely impacted his credibility. As previously discussed, Detective Kroczak's interpretation or recitation of Pierce's jail calls was duplicative because the jail calls themselves were properly admitted into evidence. The jury was able to listen to the

calls and determine for themselves what Pierce actually stated. Additionally, defense counsel provided effective cross-examination by pointing out that Detective Kroczak's testimony was merely an "interpretation" and did not relay what Pierce actually stated. Finally, during his own testimony, Pierce admitted that he had family members contact the victim to encourage her to drop the charges. Accordingly, we find that counsel's performance was not deficient nor has Pierce demonstrated that the result of the trial would have been different had counsel objected to this testimony.

### D. Merger of Allied Offenses

{¶ 43} Pierce contends that he also received ineffective assistance of counsel when counsel failed to object to the trial court's imposition of separate sentences on the offenses of rape and kidnapping. Having previously determined that Pierce's convictions for rape and kidnapping are not allied, counsel cannot be deemed ineffective for failing to raise — or acquiescing to — the issue of merger.

### E. Reagan Tokes Law

{¶ 44} Pierce lastly contends that he was denied effective assistance of counsel when counsel failed to object to the trial court's imposition of a sentence pursuant to the Reagan Tokes Law. Our reading of the sentencing transcript reveals that counsel objected to the imposition of a sentence under the Reagan Tokes Law and generally objected to the law's constitutionality. *See* tr. 842. Accordingly, we find no merit to this argument.

{¶ 45} Pierce's third assignment of error is overruled.

## IV. Reagan Tokes Law

{¶ 46} In his fourth assignment of error, Pierce contends that the trial court committed plain error in imposing a sentence under the Reagan Tokes Law because it is unconstitutional since it violates the separation-of-powers doctrine and his rights to a trial by jury and due process.

{¶ 47} Based on the authority established by this district's en banc holding in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.), the challenges Pierce advances against the constitutional validity of the Reagan Tokes Law have been overruled. *Id.* at ¶ 17-54. Accordingly, his fourth assignment of error is overruled.

{¶ 48} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR