[Cite as *State v. Mariucci*, 2023-Ohio-4795.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

City of Toledo

    Appellee

v.

Sean M. Mariucci

    Appellant

Court of Appeals No.  L-23-1033

Trial Court No.  CRB-22-05794

**DECISION AND JUDGMENT**

Decided:  December 28, 2023

* * * * *

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmy Jones, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, Sean Mariucci, appeals the February 15, 2023 judgment of the
Toledo Municipal Court, finding him guilty of aggravated menacing in violation of R.C.
2903.21(A).  Appellant argues that the trial court erred in allowing the city to use
unauthenticated evidence to improperly impeach his testimony, that his conviction is

against the manifest weight of the evidence, and that he received ineffective assistance of counsel. For the following reasons, we affirm the trial court's judgment.

## II. Facts and Procedural Background

{¶ 2} On June 21, 2022, the trial court issued an arrest warrant for appellant based on the victim, S.B.'s sworn complaint that appellant engaged in conduct that constituted aggravated menacing in violation of R.C. 2903.21(A). The charge arose from a June 15, 2022 incident in which appellant, S.B.'s neighbor, threatened to kill her, stating that "she would be in a body bag[.]" Appellant was arrested on September 17, 2022. Two days later, on September 19, 2022, appellant entered a not guilty plea to the charged offense. The matter was set for trial on February 2, 2023.

{¶ 3} Prior to trial, the city provided appellant with copies of videos it received from S.B. The videos came from a camera mounted on S.B.'s property and directed at appellant's residence. The city also produced photographs downloaded from appellant's social media accounts. None of the videos or photographs were taken on the date of the underlying incident.

{¶ 4} On the morning of trial, appellant filed a motion in limine seeking to prohibit the introduction of the videos and photographs. Appellant did not allege that the videos were unauthenticated in his motion and acknowledged that the videos included him making "certain commentary" toward the S.B.'s cameras. He argued that the videos were irrelevant to the underlying offense and constituted inadmissible "other acts" evidence under Evid.R. 404(B) because there was no video depicting the incident for

2.

which he was charged. He also argued that the evidence was inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice as described in Evid.R. 403. Appellant renewed these arguments at an in-chambers hearing just prior to trial. The city argued that the evidence did not constitute "other acts" evidence but would be introduced to show S.B.'s state of mind regarding the June 15, 2022 incident, and her fear that appellant might actually cause her harm, an element of the charged offense. The trial court took the motion under advisement and the matter proceeded to trial where the parties elicited the following testimony:

**Testimony of R.M.**

{¶ 5} R.M. is S.B.'s grandson. He lived with S.B. at all times relevant to the underlying incident. Although he could not recall the date of the underlying incident, he described the details of what occurred. R.M. was in S.B.'s living room when he heard appellant tell S.B. that he was going to kill her and her husband and put them both in the same body bag. He also testified that he was familiar with appellant and recalled overhearing additional interactions between appellant and S.B. He testified that these interactions were not friendly. He then identified appellant in the courtroom for the record.

{¶ 6} On cross-examination, R.M. testified that he had prior friendly interactions with appellant. He testified that appellant was nice to him "most of the time" but that their friendliness ended with the underlying incident.

3.

**Testimony of S.B.**

{¶ 7} S.B. testified that she lived on Canevin Drive in Toledo, Lucas County, Ohio, at the time of the underlying incident. She testified that while she was sitting on her front stoop on June 15, 2022, at approximately 11:00 p.m., appellant walked up to his neighboring front gate and told her "I'm going to kill you and your husband and put you in a body bag." She testified that she previously had a friendly relationship with appellant but that it had ended a few years prior. She could not cite a specific incident that led to the change in their relationship.

{¶ 8} During her testimony, the city introduced its Exhibit A—a Facebook post in which he complained about S.B.'s husband allegedly working with the IRS to shut down appellant's brother's business. Appellant objected to the introduction of the exhibit, arguing that it was irrelevant. The trial court admitted it "for the very limited purpose for state of mind of the alleged victim in this case only." S.B. testified that she received it from one of appellant's family members. Her initial reaction to the post was the appellant's mental health was "quickly declining." She testified that her husband had hired appellant's brother's business to move his daughter to Texas. She was unaware of any additional contact between her husband and the business.

{¶ 9} S.B. was next presented with city's Exhibit B—a photograph of appellant standing in his kitchen holding two firearms. Appellant again objected, without stating a specific basis. The trial court overruled the objection. S.B. explained that she received this photograph from one of appellant's family members, and had seen the photograph on

4.

her neighbor's and the "mother of [appellant's] children's" cell phones prior to the June 15, 2022 incident. S.B. stated that she found the photograph "kind of scary." She testified that she thought of both the Facebook post and the photograph at the time of the June 15, 2022 incident. She stated that this caused her to believe that "[appellant] was going to kill us."

{¶ 10} The city next introduced its Exhibit C—a flash drive containing videos S.B. emailed to the state. S.B. stated that the drive included "some videos on that I had sent to you." The videos were of "the harassment that we put up with every day from my next-door neighbor, [appellant]." Appellant objected to the admission of these videos into evidence, again arguing that they depicted "other acts" and were not relevant to the charged offense. The trial court allowed S.B. to give further testimony as to what the drive actually contained before ruling on the objection. S.B. testified that the videos were taken within the six months prior to trial and close to the time of the underlying incident and depicted appellant yelling at S.B. Appellant then renewed his objection. The trial court sustained the objections and the videos were not played during S.B.'s testimony. S.B. then concluded her direct examination testimony by identifying appellant in the courtroom.[1]

---

[1] The videos were not admitted into evidence at the close of the city's case-in-chief in light of the trial court's ruling on appellant's objection. Despite ultimately being played as impeachment evidence during appellant's testimony in his own defense, they were not included as part of the record on appeal.

5.

{¶ 11} On cross-examination, S.B. confirmed that she previously had a friendly relationship with appellant. She testified that she contacted the police immediately after the June 15, 2022 incident but that they did not arrive at her residence until approximately 2:00 a.m. the following morning. The city stipulated that there was no video of the June 15, 2022 incident despite her sworn affidavit stating that she had "video evidence of the altercation." S.B. also testified that she would not have suspected appellant had mental health issues unless someone had shown her the Facebook post and photograph. She also confirmed that appellant had not threatened her with physical harm at any point prior to June 15, 2022 and that, although it had been discussed with counsel, she had not sought a civil protection order from appellant since the incident.

**Appellant's Crim.R. 29 motion**

{¶ 12} The city rested its case at the conclusion of S.B.'s testimony and requested admission of its Exhibits A and B into the record. The trial court admitted those exhibits over appellant's renewed objections. Appellant then made an oral motion for judgment of acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion, finding that S.B.'s testimony, when viewed in a light most favorable to the city, was sufficient to support each element of the offense.

{¶ 13} Appellant then proceeded with his case-in-chief. Appellant elected to testify on his own behalf. In light of that decision, the trial court advised him of his constitutional right to remain silent and that he was not obligated to testify. Appellant acknowledged that he understood these rights, that he was agreeing to waive them, and

6.

that he wanted to testify as part of his defense.  Having waived his rights, appellant gave the following testimony:

**Testimony of Appellant**

{¶ 14} Appellant is S.B.'s neighbor.  He testified that on June 15, 2022, he had participated in an argument with S.B., her husband, and her brother-in-law outside their residence.  He denied threatening S.B.  He testified that the argument was about S.B. and her husband having cameras pointed at his residence.  He stated that he has been diagnosed with PTSD and anxiety resulting from S.B. and her husband's alleged harassment of him.

{¶ 15} On cross-examination, appellant confirmed that Exhibit A was a Facebook post with his name on it.  He stated that S.B.'s husband was "conspiring" against him but did not offer any specific details.  He also acknowledged that the city's Exhibit B contained a photograph of him holding two firearms.  He was unaware of how S.B. came into possession of the photograph.

{¶ 16} As to the alleged harassment he suffered, appellant testified that having three cameras pointed at his residence was inducing his anxiety and PTSD.  He confirmed that S.B. and her husband did not speak to him but also claimed that he did not make any threats or harass them in any way.  He indicated that he was unable to control himself when his PTSD was induced and that he did speak with S.B. and her husband on multiple occasions about the video cameras.  He testified that this was in response to S.B. and her husband's harassment of him.  He stated that he was not aware if S.B. and her

7.

husband were aware of his "erratic behavior" toward them prior to the June 15, 2022 incident.

{¶ 17} The city, then, sought permission from the court to play the previously-excluded videos in its Exhibit C to impeach appellant's testimony that he did not know if they S.B. and her husband were aware of his past behavior. The trial court held that appellant opened the door to that impeachment through his testimony, and allowed the videos to be played over appellant's objections. A total of 7 videos were played during appellant's testimony. In response to each video, appellant claimed that the contents of the video were blurry and he could not identify the male voice he heard. He did concede that the videos included images of his property and at least one of them showed S.B. He further acknowledged that the videos contained audio of someone yelling but he could not confirm that he was the one yelling at S.B. and her husband. On redirect examination, appellant again denied threatening S.B. on June 15, 2022.

## Closing argument, verdict, and sentencing

{¶ 18} Appellant rested his case at the close of his testimony and the parties proceeded with closing arguments. The trial court then found appellant guilty of the charged offense and sentenced him to a suspended jail term of 180 days, three years of active probation, ordered him to undergo a mental health evaluation and to follow any recommended treatment, and imposed a fine of $75 and court costs. The trial court's judgment was memorialized on February 15, 2023.

8.

### III.  Assignments of Error

{¶ 19} Appellant timely appealed and assigns the following errors for our review:

1. The trial court abused its discretion when it improperly allowed videographic evidence to be introduced against the [appellant] without authentication.

2. The trial court abused its discretion when it allowed evidence to be admitted for impeachment purposes when it did not impeach the testimony of the [appellant].

3. The trial court erred when it convicted [appellant] as the conviction was against the manifest weight of the evidence.

4. [Appellant] received ineffective assistance of counsel when defense counsel failed to contact or subpoena any witnesses to testify on behalf of [appellant].

### IV.  Law and Analysis

#### a.  The trial court did not err in finding that the videos played at trial were authentic pursuant to Evid.R. 901.

{¶ 20} In his first assignment of error, appellant argues that the city's Exhibit C was not properly authenticated and, therefore, the trial court erred in allowing the city to play the videos contained therein.  Specifically, appellant argues that S.B.'s lack of testimony regarding the precise nature of the videos on the drive precluded the trial court from finding that they were authentic.  We disagree.

{¶ 21} At the outset, we find that appellant has forfeited all but plain error review of this assigned error.  At trial, appellant did not challenge the authenticity of the video evidence the city sought to introduce.  Instead, his challenge to the evidence was that the videos were inadmissible "other acts" evidence as described in Evid.R. 404(B).  Now, he

9.

asks this court, for the first time, to find that the trial court erred when it failed to find that the videos were not properly authenticated.

{¶ 22} "Arguments raised for the first time on appeal are generally barred. Such arguments are barred by the doctrine of waiver for failure to raise these arguments before the trial court. It is well-established that a party cannot raise any new issues or *legal theories* for the first time on appeal[.]" *State v. Talley,* 6th Dist. Lucas Nos. L-20-1131, L-20-1132, 2021-Ohio-2558, ¶ 22, citing *Cawley JV, LLC v. Wall St. Recycling, LLC,* 35 N.E.3d 30, 2015-Ohio-1846 (8th Dist.) (emphasis added). When an argument is forfeited on appeal for failing to make that argument at trial, the appellant waives all but plain error review. *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23.

{¶ 23} Crim.R. 52(B) states "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Under Crim.R. 52(B), the appellant bears the burden of demonstrating that a plain error affected his substantial rights." *State v. Boaston,* 2017-Ohio-8770, 100 N.E.3d 1002, ¶ 63 (6th Dist.), citing *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14. In order for a reviewing court to find plain error, it must make the following three findings:

> "First, there must be an error, i.e. a deviation from a legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights.""

*Id.,* citing *State v. Barnes,* 94 Ohio St.3d 21, 759 N.E.2d 1240 (2002). Affecting a substantial right means "that the trial court's error must have affected the outcome" of the trial court proceedings. *Id.* Finding plain error must be done "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.,* citing *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

{¶ 24} Here, appellant argues that the videos were not properly authenticated because S.B. did not expressly describe their contents. Appellant's argument fails at the first step of our plain error analysis because he cannot show that the trial court committed any error in failing to exclude the evidence as unauthenticated. Authentication of evidence is governed by Evid.R. 901, and requires the proponent of the evidence to demonstrate "that the matter in question is what the proponent claims." *In re. C.G.,* 6th Dist. Lucas No. L-23-1007, 2023-Ohio-4239, ¶ 44. The threshold for authentication is very low, and "reflects an orientation of the rules toward favoring the admission of evidence." *Id.* at ¶ 46, citing *State v. Giles,* 6th Dist. Lucas No. L-20-1075, 2021-Ohio-2865, ¶ 31. We previously outlined the proper procedure for authentication of evidence in *State v. Gibson,* 6th Dist. Lucas Nos. L-13-1222, L-13-1223, 2015-Ohio-1679, ¶ 45, in which we stated:

> The showing of authenticity is not on par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need only be a prima facie showing, to the court of authenticity, not a full argument on admissibility. Thus, once a prima facie showing has been made to the court that the [evidence] is what its proponent claims, it should be admitted. At that point the burden of going forward with respect to authentication shifts to the opponent to rebut the prima facie showing by

11.

presenting evidence to the trier of fact that would raise questions as to the genuineness of the [evidence]. * * * It is the trier of fact who will ultimately determine the authenticity of the evidence[.]"

*Id.* (citations omitted).

{¶ 25} S.B.'s testimony provided the basis for a prima facie showing that the video evidence was authentic. This testimony included the following exchange:

Q. Do you recall speaking to me in courtroom 4 on the arraignment? Do you recall me asking you to give me video for a couple days before the alleged incident date?

A. Yes.

Q. Is that what's on the thumb drive?

A. Some of them.

Put simply, S.B. testified that she was asked to provide videos to the city and confirmed that she had provided those videos that were included on the flash drive. This testimony was sufficient to make a prima facie showing that the videos were authentic.

{¶ 26} Appellant, in response to this showing, made no effort to show that the videos were inauthentic. After successfully precluding their admission into evidence as inadmissible under Evid.R. 404(B) during the city's case-in-chief, appellant failed to provide any evidence to dispute the authenticity of the videos when they were played for impeachment purposes. Instead, appellant merely renewed his argument that the videos were not related to the charged offense. Indeed, appellant had previously admitted to the authenticity of the videos in his motion in limine when he noted that they depicted him

12.

yelling at S.B. and her husband. As a result, appellant did not satisfy his reciprocal burden to introduce evidence challenging the authenticity of the videos.

{¶ 27} For these reasons, we find that the trial court did not commit error, let alone plain error, in failing to find that the videos played at trial were not authenticated pursuant to Evid.R. 901. Appellant's first assignment of error is, therefore, found not well-taken.

### b. The trial court did not err in allowing the city to impeach appellant with video evidence.

{¶ 28} In his second assignment of error, appellant argues that the trial court improperly allowed the city to impeach his credibility by playing the video evidence it had previously excluded. Specifically, appellant argues that the videos did not challenge the credibility of his testimony to the extent that he stated S.B.'s cameras being pointed at his residence was harassment against him. Again, appellant failed to make this argument at trial and, therefore, we are limited to plain error review. *Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, at ¶ 23.

{¶ 29} Evid.R. 613 provides for the impeachment of witnesses through prior conduct. "During examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach." Evid.R. 613(C). Appellant does not dispute whether the city met the technical requirements of Evid.R. 613 before introducing the videos. Instead, appellant argues only that the videos did not impeach his credibility

13.

because they did not refute any statements that he made during his testimony. Having reviewed the record, we find that appellant's argument is without merit.

{¶ 30} Immediately prior to the city requesting permission to play the videos, appellant testified that he did not know whether S.B. was aware of his prior "erratic behavior." More importantly, appellant specifically denied engaging in conduct captured in the videos, namely, his harassment of S.B. In light of this testimony, and with the trial court's permission, the city played the videos for impeachment purposes. In his related testimony, appellant identified the property shown in the video as his and, in at least one of the videos, identified S.B. as the subject of harassment from a male. He stated that the videos were too blurry to determine that he was the male in the videos. The trial court ultimately concluded that it was appellant yelling in the videos.

{¶ 31} Notably, we are precluded from reviewing the videos as appellant did not ensure that they were included as part of the record in this appeal. *See In re. D.T.,* 2023-Ohio-2245, 220 N.E.3d 177 (6th Dist.) (holding that appellant bears the burden to ensure that the record necessary to resolve its assigned errors is complete). For this reason, we presume the validity of the trial court's proceedings. *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). We are left, then, with an incomplete record and, therefore, must presume that the trial court found that the videos showed appellant engaged in conduct inconsistent with his testimony. Pursuant to Evid.R. 613, the videos were properly introduced as impeachment evidence and the trial court did not

commit plain error in allowing them to be played during appellant's testimony. For these reasons, appellant's second assignment of error is found not well-taken.

### c. Appellant's conviction is not against the manifest weight of the evidence.

{¶ 32} In his third assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. He argues that because the only testimony regarding the argument on June 15, 2022, was his and S.B.'s, that the case was simply a "he said/she said" and that there was "insufficient evidence presented" to support his conviction.

{¶ 33} We review whether the trial court's judgment following a bench trial was against the manifest weight of the evidence using the same standard as for a judgment arising from a jury trial. *See State v. Gates,* 6th Dist. Wood No. WD-03-015, 2003-Ohio-5186, ¶ 13-17. When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the [factfinder] clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest

15.

weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 34} Here, appellant's sole argument that his conviction was against the manifest weight of the evidence is that the trial court heard only conflicting testimony. That is, S.B. said appellant made the threat, appellant denied making the threat. This alone, he argues, makes his conviction against the manifest weight of the evidence. This argument is invalid for two reasons. First, "it is well-established that 'a conviction is not against the manifest weight of the evidence solely because the [factfinder] heard inconsistent testimony.'" *State v. Talley,* 2016-Ohio-8010, 74 N.E.3d 868, ¶ 23, citing *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38. Second, this argument ignores the trial court's determination that appellant was not credible based on his remaining testimony. That testimony included appellant saying that he acted aggressively due to his "induced" PTSD and his "issue with the victim." Based on that testimony, the trial court expressly held "I do believe the alleged victim in this case. I believe that something was said that day. And I do believe the threat was made."

{¶ 35} Put simply, the trial court performed the function of a factfinder and resolved the conflicting testimony against appellant. The mere existence of that conflicting testimony does not render appellant's conviction to be against the manifest weight of the evidence. As a result, this is not the exceptional case in which the evidence

16.

weighs heavily against conviction and appellant's third assignment of error is not well-taken.

### d. Appellant's trial counsel did not provide ineffective assistance.

{¶ 36} Appellant's fourth assignment of error argues that his trial counsel provided ineffective assistance of counsel by failing to subpoena any witnesses to testify on his behalf. In support of this argument, appellant attached an affidavit to his brief stating that he had provided his attorney with a list of potential witnesses and a copy of the message he allegedly sent to counsel identifying those witnesses. None of these witnesses testified at trial. Appellant argues that the failure to call these witnesses constitutes ineffective assistance of counsel and that his conviction should be reversed. Because appellant relies on evidence outside the record, he cannot support his claim for ineffective assistance as a matter of law in this direct appeal.

{¶ 37} In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *State v. Bryan,* 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 154. To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v.*

17.

*Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Importantly, "[a] claim of ineffective assistance of counsel in a direct appeal *must be established by the evidence in the record.*"  *State v. Perkins,* 6th Dist. Sandusky No. L-S-18-010, 2019-Ohio-2049, ¶ 11, citing *State v. Carter,* 2017-Ohio-7501, 96 N.E.3d 1046, ¶ 78 (7th Dist.) (emphasis added).  "If establishing ineffective assistance of counsel requires proof outside the record, then such a claim *is not appropriately considered on direct appeal."* *Id.,* citing *State v. Hartman,* 93 Ohio St.3d 274, 299, 754 N.E.2d 1150 (2001) (emphasis added).

{¶ 38} Here, appellant's entire argument is based on his counsel's alleged failure to call witnesses to testify on his behalf.  The record is devoid of any mention of all but one of these witnesses.  Further, appellant does not identify any portion of the record that shows trial counsel's failure to call these witnesses fell below a reasonable standard or resulted in prejudice to appellant.  Appellant relies solely on the additional information provided in this appeal to support this assigned error.  Since he cannot establish his alleged ineffective assistance of counsel claim from the record, it is not properly raised in this direct appeal from his conviction.  *Perkins* at ¶ 11.  Therefore, we find his fourth assignment of error not well-taken.

## V. Conclusion

{¶ 39} For these reasons, we find appellant's first, second, third, and fourth assignments of error not well-taken and we affirm the February 15, 2023 judgment of the Toledo Municipal Court.

18.

**{¶ 40}** Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.          _____

JUDGE

Gene A. Zmuda, J.

_____

Charles E. Sulek, J.          JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.