[Cite as *State v. Kamholz*, 2024-Ohio-865.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio/City of Vermillion                    Court of Appeals No.  E-23-002

    Appellee                                              Trial Court No.  CRB02200040

v.

Ricky J. Kamholz                                    **DECISION AND JUDGMENT**

    Appellant                                         Decided:  March 8, 2024

* * * * *

Wayne R. Nichol, for Appellee.

Russell V. Leffler, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a November 4, 2022 judgment of the Vermillion Municipal Court, convicting appellant on one count of domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree.  On December 13, 2022, appellant was sentenced to 180 days in jail, with 175 days suspended, and a 90-day period of electronic monitoring.  For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Ricky Kamholz, sets forth the following two assignments of error:

"I. The conviction for domestic violence was against the manifest weight of the evidence [].

"II. It was error for the court to exclude from evidence the testimony of the neighbor as to what the alleged victim told the neighbor because it was not being introduced for the truth of the matter asserted."

{¶ 3} The following undisputed facts are relevant to this appeal. The context of this case centers upon the strained relationship between appellant and his wife, the victim in this case. Appellant had recently been terminated from a position that he had held for many years in the automotive industry. Appellant then obtained employment in the retail sector, with considerably lower compensation. This caused stressful financial challenges in the household. In addition, appellant became concerned that the victim was attempting to reconnect with a former significant other. The record shows that the parties began to quarrel with increasing frequency and intensity.

{¶ 4} The parties resided in a marital home in Vermillion, along with their four-year-old daughter, as well as the victim's older daughter from a prior relationship. Appellant, by his own admission, would regularly, forcefully convey to the victim his perception that she was not keeping their home adequately clean and orderly, nor did he approve of how she did the household laundry. The record shows that both parties are employed outside of the home.

2.

{¶ 5} On February 28, 2022, the victim got her older daughter prepared for the day and onto the school bus. After returning inside to begin getting their younger daughter up and ready for the day, appellant began yelling about their troubled finances, and he reiterated his disgruntlement that the victim did not adequately perform household chores. In response to the outburst, the victim sought refuge inside of the bathroom. Shortly thereafter, the parties' four-year-old daughter joined her mother inside of the bathroom and locked the door behind her.

{¶ 6} Appellant remained in the hallway outside of the locked bathroom and continued yelling at the victim. The victim then began recording the incident on her mobile phone. The recording was shown during the jury trial in this case. While appellant claims upon appeal that he urgently needed to urinate, and that his actions during the incident were driven by that personal discomfort, the recording contains no such reference. Ultimately, appellant forced open the door, which then struck the victim, pushed her into the wall, and knocked her mobile phone out of her hand, ending the recording.

{¶ 7} Shortly after the incident, appellant demanded that the victim drive him to work. Prior to the incident, appellant had contacted his employer and indicated that he felt unable to come into work that day. However, appellant was advised by his supervisor that if he did not appear for work that day, there would be disciplinary consequences.

3.

{¶ 8} After dropping appellant off at his workplace in Sheffield Village, Ohio, the victim then drove herself to Mercy Hospital in Lorain seeking medical treatment for that morning's incident with appellant. She was diagnosed with right arm muscular strain and pain, her arm was placed in a sling, and she was advised to seek follow-up care. In addition, the Mercy security officer notified the Vermillion Police Department of the incident so that a police investigation would occur. Following the investigation, appellant was charged with one count of domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree.

{¶ 9} On November 4, 2022, the case proceeded to jury trial. At the conclusion of the jury trial, appellant was convicted and sentenced to 180 days in jail, with 175 days suspended. This appeal ensued.

{¶ 10} In the first assignment of error, appellant argues that the domestic violence conviction was against the manifest weight of the evidence. We do not concur.

{¶ 11} As held by this court in *City of Toledo v. Mariucci*, 6th Dist. Lucas No. L-23-1033, 2023-Ohio-4795, ¶ 33,

> When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the factfinder clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed in a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 678

4.

N.E.2d 541 (1997) * * * [W]e sit as a thirteenth juror and scrutinize the factfinder's resolution of the conflicting testimony. *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3 172, 485 N.E.2d 717 (1st Dist. 1983).

{¶ 12} The trial transcripts show that appellee first presented the testimony of the victim. The victim testified in detail regarding appellant's outburst that morning, centered upon his dissatisfaction with how the home was being maintained by the victim. The victim explained that, as she had similarly done in response to past commotions from appellant, she took refuge inside of the bathroom. The victim next testified that their four-year-old daughter then joined her inside of the bathroom, and locked the door.

{¶ 13} The victim explained that, at this juncture, she began to record the incident on her mobile phone. The recording was then played for the court. It showed the victim and their daughter inside of the bathroom, both crying, while also capturing audio of appellant screaming at the victim from outside of the door about the above-discussed household complaints. The recording terminates upon appellant forcing open the door, which strikes the victim, pushes her against the bathroom wall, and knocks her mobile phone out of her hand, at which point the recording terminates.

5.

{¶ 14} Upon rigorous cross-examination, the victim acknowledged that the x-rays subsequently taken of her at the hospital reflected that she suffered no fracture or dislocation of her right arm. However, she steadfastly disputed the assertion that this finding should be construed as showing that she was uninjured, particularly given the hospital records which document that she was diagnosed with right arm muscular pain and strain, had her right arm placed in a protective sling by the medical provider, and was advised to seek follow up care.

{¶ 15} Appellee next presented the testimony of Charles Falkiewicz ("Falkiewicz"), the physician's assistant who treated the victim at Mercy Hospital in Lorain. Falkiewicz testified that the victim sought treatment after she suffered right arm injury during a domestic incident with her spouse. As a result of the injury, he placed her right arm in a sling for protection and recovery purposes. Falkiewicz further testified that, following his examination of the victim, his medical impressions were that she had sustained upper right arm muscle strain, causing her to experience right arm pain.

{¶ 16} Appellee next presented the testimony of Officer David Wood ("Wood") of the Vermillion Police Department, the investigating officer in this case. Wood testified that while on duty on February 28, 2022, he was advised by dispatch that a Vermillion resident had just been treated at Mercy Hospital in Lorain for an injury that was incurred in a domestic incident. Wood testified that the victim reported to him in person later that day, discussed the incident, and drafted a statement detailing the incident. Wood relayed that the victim stated that appellant had forced open the bathroom door, which then struck

6.

her, and pushed her into the bathroom wall. Wood next reviewed his body cam footage of his interview with the victim. The footage showed the victim emailing Wood her mobile phone recording of the incident. Wood testified that the victim was emotional and upset. In addition, he noted that her right arm was in a sling, with the hospital band visible on her wrist. Wood then presented photographs that he had taken of the victim and her right arm.

{¶ 17} Wood testified that when he met with appellant on March 2, 2022, appellant declined to provide a written statement. However, appellant agreed to verbally discuss the incident. Wood described how appellant attributed blame for the incident upon the victim for not properly performing household chores. Wood testified that upon completing his investigation he determined that the evidence supported charging appellant with domestic violence.

{¶ 18} Appellant next testified to the trial court on his own behalf. Appellant acknowledged that prior to this incident, he had been, "bickering for some time" with the victim. Appellant testified that he was disgruntled and agitated as he perceived their house to be, "Filthy. Cluttered." In addition, appellant testified that he perceived that the victim had, "an old boyfriend pursuing her."

{¶ 19} Appellant next testified that he had been experiencing stress related to having recently been terminated from a well-paid position with an automotive manufacturing company. Appellant conceded that his termination stemmed from his violations of workplace health and safety regulations with which he disagreed.

7.

{¶ 20} Regarding the events of February 28, 2022, appellant testified, "With everything that was going on, with the arguing and the bickering * * * I didn't feel that I could go to work and do my job that day. I was too stressed. But my boss sent me a message [saying] that I needed to be there."

{¶ 21} Appellant next gave unsupported testimony of suffering from an enlarged prostate. In conjunction, appellant next stated, "I was pretty tense and I really had to go [urinate] bad[ly] * * * I opened the [bathroom] door and I felt resistance [from the victim] * * * I mean I was halfway through the door and she started yelling, 'stop it.' But at that point, I was pretty much about going * * * I tried to squeeze through as best I could without the door pushing into her." Lastly, appellant claimed to have not observed the door striking the victim because, "I was focused on trying to get to the toilet quick."

{¶ 22} Appellant next presented the testimony of Denise Danser, a long-time neighbor and friend of appellant in Vermillion. When asked, "Are you familiar with the events of February 28, 2022?", Danser replied, "I'm not good with dates, but I'm familiar with what happens." Danser then confirmed that she did not witness the incident.

{¶ 23} Danser stated that she recalled being flagged down at some point by the victim as she was backing out of her driveway. Danser stated that she then said to the victim, "Hi. What's going on?" The trial court then sustained appellee's objection when Danser wanted to testify as what she claimed that the victim stated to her in response. However, the trial court permitted Danser to testify in detail as to her subsequent, personal observations of the victim. Danser, who had just disclosed her difficulty with

8.

dates, next testified that on March 1, 2022, the day after the incident, she observed the victim sitting outside on her front porch for approximately one-hour wearing her sling, but then observed the victim remove her sling and do weeding in the yard.

{¶ 24} Upon cross-examination, Danser testified that she had been neighbors with appellant for 15 years prior to this incident. Appellee then inquired, "[Y]ou consider [appellant] a friend, right?" Danser replied, "Yeah." Danser then conceded that after she learned that appellant had been charged with domestic violence, she contacted appellant. Lastly, Danser testified, "I don't stick my head out my window to observe my neighbors * * * I'm very busy with my own life." Both parties rested and the case was submitted to the jury.

{¶ 25} Following their deliberations, the jury found appellant guilty. The jury foreperson stated, "On or about the 28th day of February, 2022 * * * the defendant did knowingly cause or attempt to cause physical harm to a family or household member, contrary to, and in violation of, Section 2919.25(A) of the Revised Code of Ohio."

{¶ 26} We have carefully considered and reviewed the record of evidence, with particular focus upon the transcripts of the trial proceedings. The record contains undisputed evidence reflecting that on February 28, 2022, following a heated outburst by appellant, the victim took refuge inside of the bathroom in their home. Their younger daughter then joined her mother inside of the bathroom and locked the door. The victim then began recording the incident on her mobile phone. While yelling at the victim about

9.

household tasks, appellant forced open the door, which struck the victim and pushed her into the wall, knocking her phone out of her hand, ending the recording.

{¶ 27} Appellant concedes the key points of the events, but, without evidentiary support, now attempts to attribute blame upon the victim for denying appellant access to the bathroom when he claims to have needed to urgently urinate. In addition, appellant's friend and neighbor, who did not observe the incident and advised the court that she was not good with dates, provided testimony regarding her claimed observation of the victim outside performing yard work without wearing her sling on March 1, 2022.

{¶ 28} We have carefully reviewed and considered the record of evidence. We cannot find that the factfinder, in considering witness credibility and resolving evidentiary conflicts, created a manifest miscarriage of justice in finding the testimony of appellee's witnesses and the cell phone video footage of the incident, to be of greater credibility than the testimony of appellant and appellant's friend. The record shows that this is not an exceptional case in which the evidence weighs heavily against the conviction.

{¶ 29} Accordingly, we find appellant's first assignment of error not well-taken.

{¶ 30} In appellant's second assignment of error, appellant contends that the trial court erred in limiting the neighbor's testimony to her own observations of the victim, and not permitting her hearsay testimony of what the victim allegedly stated to her after the incident. We do not concur.

10.

**{¶ 31}** As this court held in *Stachura v. City of Toledo*, 6th Dist. Lucas No. L-19-1269, 2022-Ohio-345, ¶ 86,

> [T]he trial court has broad discretion regarding the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 569 N.E.2d 1056 (1991). However, while there is discretion to admit or exclude relevant evidence, there is no discretion to admit hearsay. *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶29 (6th Dist.). Thus, an appellate court applies a de novo standard of review to a trial court's decision regarding whether evidence is hearsay or non-hearsay under Evid.R. 801.

**{¶ 32}** In support of the second assignment of error, appellant states that, "Trial counsel had a strategy to try and show the victim as an exaggerator." However, the record reflects that Danser was permitted to testify at length regarding her claimed personal observations of the victim on March 1, 2002, the day after the incident, in which Danser stated to have observed the victim performing yard work, including weeding, while not wearing her arm sling.

**{¶ 33}** Appellant speculates, *without proffer*, as to what the victim said to the neighbor. "It is apparent that the neighbor would have testified about S.K. claiming she had been brutally attacked by S.K.'s husband and showing the sling as the extent of her

11.

injury which was what called her attention to her neighbor." He further argues that, "This additional claiming of injury would have been especially helpful."

{¶ 34} However, contrary to appellant's position on appeal, the record shows that counsel was not precluded from presenting the exaggerator strategy.

{¶ 35} We further note that appellant offers no legal authority in support of the second assignment of error. Rather, appellant recites the Evid.R. 801(C) definition of hearsay and then concludes, "Coupled with assignment of error I[,] this requires a reversal of the conviction."

{¶ 36} Thus, we note that, "Where an appellant fails to develop an argument in support of an assignment of error, this court will not create one for him." *State v. Fenderson*, 6th Dist. Erie No. E-21-018, 2022-Ohio-1973, ¶ 69-71, citing *State v. Franks*, 2017-Ohio-7045, 95 N.E.3d 773, ¶16 (9th Dist.), *Id*., quoting *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, ¶ 8 (May 6, 1998).

{¶ 37} Additionally, the record reflects that counsel had the opportunity to directly question the victim upon cross-examination regarding any post-incident conversations between the victim and Danser. This did not occur. Moreover, as noted above, the related speculation was *without proffer*.

{¶ 38} Upon our de novo review, we find no evidence demonstrating that the trial court erred in excluding the above-referenced hearsay testimony of Danser. We find appellant's second assignment of error not well-taken.

12.

**{¶ 39}** On consideration whereof, the judgment of the Vermillion Municipal Court is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

13.

14.